**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

---

JUSTIN RIDDLE,

        Plaintiff,

v.

OMAHA PUBLIC SCHOOLS,

        Defendant.

Case No. 8:23-cv-00547

**BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM AND LACK OF STANDING**

---

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................ 1

    A.    The Parties ...................................................................................... 1

    B.    Public Participation at OPS Board Meetings ............................................. 3

    C.    The August 2, 2021 Board Meeting ......................................................... 4

    D.    Plaintiff's Subsequent Participation at OPS Board Meetings ................... 6

    E.    The Harassment Protection Order ............................................................ 8

    F.    The Lawsuits .......................................................................................... 9

ARGUMENT ...................................................................................................... 10

    A.    THE APPLICABLE PLEADING STANDARD ......................................... 10

    B.    PLAINTIFF FAILED TO PLEAD NECESSARY ELEMENTS AND PLAUSIBLE FACTS SUPPORTING ANY ENTITY LIABILITY OF OPS UNDER 42 U.S.C. § 1983 .............................................................. 12

    C.    PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE CONSPIRACY TO IMPUTE ALLEGED ACTIONS OF THIRD-PARTY GOVERNMENT ACTORS TO OPS AND FURTHER CANNOT RELY ON ALLEGED CONSTITUTIONAL VIOLATIONS SUFFERED BY OTHERS. .............. 17

    D.    PLAINTIFF FAILED TO PLAUSIBLY ALLEGE AN UNDERLYING CONSTITUTIONAL VIOLATION ............................................................ 20

            i. The Alleged First Amendment Violations ................................... 20

            ii The Alleged Fourteenth Amendment Violations ........................ 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).................................... 10, 11

*Askew v. Millerd*,
   191 F.3d 953 (8th Cir. 1999) ................................................................... 17

*Barnes v. Smith*,
   654 F. Supp. 1244 (E.D. Mo. 1987) .......................................................... 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)............................. 11, 12, 19

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009)................................................................... 11

*Brandy v. City of St. Louis, Missouri*,
   75 F.4th 908 (8th Cir. 2023) ................................................................... 23

*Bridges v. Gilbert*,
   557 F.3d 541 (7th Cir. 2009) ................................................................... 24

*Brooks v. Francis Howell Sch. Dist.*,
   599 F. Supp. 3d 795 (E.D. Mo. 2022) ...................................................... 20

*Campbell v. Reisch*,
   986 F.3d 822 (8th Cir. 2021)................................................................... 22

*Chapman v. Musich*,
   726 F.2d 405 (8th Cir.1984), cert. denied, 469 U.S. 931, 105 S.Ct. 325,
   83 L.Ed.2d 262 (1984) ......................................................................... 13

*City of Canton v. Harris*,
   489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).......................................... 13

*Conley v. Gibson*,
   355 U.S. 41 (1957)................................................................................ 11

*Corwin v. City of Indep., MO.*,
   829 F.3d 695 (8th Cir. 2016)................................................................... 13

*D.B. v. Hargett*,
   No. CIV. 13-2781 ................................................................................ 15

*Davenport v. Univ. of Ark. Bd. of Trs.*,
    553 F.3d 1110 (8th Cir.2009) ........................................................... 25

*Dunn v. White*,
    880 F.2d 1188 (10th Cir. 1989) ...................................................... 12

*Duvall v. Sharp*,
    905 F.2d 1188 (8th Cir. 1990) ........................................................ 17

*Eggenberger v. W. Albany Twp.*,
    820 F.3d 938 (8th Cir. 2016) .......................................................... 23

*Eichenlaub v. Twp. of Indiana*,
    385 F.3d 274 (3d. Cir., 2004) ......................................................... 21

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ......................................................................... 12

*Green v. Nocciero*,
    676 F.3d 748 (8th Cir. 2012) .......................................................... 20

*Hahn v. Star Bank*,
    190 F.3d 708 (6th Cir.1999) ........................................................... 25

*Harmon v. City of Kansas City, Missouri*,
    197 F.3d 321 (8th Cir.1999) ........................................................... 21

*Heffron v. International Soc'y for Krishna Consciousness*,
    452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) ................. 20

*Holscher v. Mille Lacs Cnty.*,
    924 F. Supp. 2d 1044 (D. Minn. 2013) .......................................... 15

*Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*,
    No. 23-CV-33-CJW-MAR, 2023 WL 6163487 (N.D. Iowa Sept. 21,
    2023) .............................................................................................. 20

*Jane Doe A. v. Special School District of St. Louis*,
    901 F.2d 642 ................................................................................. 14

*Jones v. Nebraska Dep't of Correction Servs.*,
    No. 8:20CV365, 2021 WL 490388 (D. Neb. Feb. 10, 2021) .......... 18

*Justin Riddle v. Omaha Public Schools*,
    United States District Court for the District of Nebraska, Case No. 8:23-
    cv-00455 ........................................................................................ 9

*Shrum ex rel. Kelly v. Kluck*,
   249 F.3d 773 (8th Cir. 2001) .................................................................. 13

*Laney v. City of St. Louis*,
   56 F.4th 1153 (8th Cir. 2023) ............................................................... 23

*Larsen v. Papillion La Vista Cmty. Sch. Dist.*,
   No. 8:23CV190, 2023 WL 7183795 (D. Neb. Nov. 1, 2023) ................................... 15

*Lee v. Pine Bluff Sch. Dist.*,
   472 F.3d 1026 (8th Cir. 2007) .............................................................. 15

*Levy v. Ohl*,
   477 F.3d 988 (8th Cir. 2007) ............................................................... 3

*Magee v. Trustees of Hamline Univ., Minn.*,
   747 F.3d 532 (8th Cir. 2014) ........................................................... 18, 22

*McNeally v. HomeTown Bank*,
   No. 21-CV-2614, 2022 WL 2220922 (D. Minn. June 21, 2022) .............................. 20

*Mettler v. Whitledge*,
   165 F.3d 1197 (8th Cir. 1999) .............................................................. 14

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).................................... 12, 13, 14

*Mulvenon v. Greenwood*,
   643 F.3d 653 (8th Cir.2011) ................................................................ 25

*Naucke v. City of Park Hills*,
   284 F.3d 923 (8th Cir. 2002) ............................................................... 23

*New York Times Co. v. Sullivan*,
   376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)................................... 20

*P.H. v. School Dist. of Kansas City*,
   265 F.3d 653 (8th Cir.2001) ................................................................ 15

*Palmore v. City of Pac.*,
   851 F. Supp. 2d 1162 (E.D. Mo. 2010) ...................................................... 23

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
   460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)................................... 20

*Porous Media Corp. v. Pall Corp.*,
   186 F.3d 1077 (8th Cir.1999) ("A court may consider the complaint,
   matters of public record, orders, materials embraced by the complaint,
   and exhibits attached to the complaint in deciding a motion to dismiss
   under Rule 12(b)(6).") ................................................................................... 3

*Quraishi v. St. Charles Cnty., Missouri*,
   986 F.3d 831 (8th Cir. 2021) ..................................................................... 23

*Raines v. Byrd*,
   521 U.S. 811, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997) ....................... 19

*S.J. v. Kansas City Missouri Pub. Sch. Dist.*,
   294 F.3d 1025 (8th Cir. 2002) ....................................................... 14, 15, 16

*Sandknop v. Missouri Dep't of Corr.*,
   932 F.3d 739 (8th Cir 2019) ....................................................................... 12

*Sanimax USA, LLC v. City of S. St. Paul*,
   496 F. Supp. 3d 1285 (D. Minn. 2020) ........................................................ 3

*Scheffler v. Molin*,
   743 F.3d 619 (8th Cir. 2014) ..................................................................... 23

*Snider v. City of Cape Girardeau*,
   752 F.3d 1149 (8th Cir. 2014) .............................................................. 14, 16

*Stone v. Harry*,
   364 F.3d 912 (8th Cir. 2004) ..................................................................... 12

*Thelma D. By & Through Delores A. v. Bd. of Educ. of City of St. Louis*,
   934 F.2d 929 (8th Cir. 1991) ............................................................... 14, 15

*Vaughn v. Ruoff*,
   304 F.3d 793 (8th Cir.2002) ....................................................................... 25

*Ward v. Rock Against Racism*,
   491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ........................... 21

*White v. City of Norwalk*,
   900 F.2d 1421 (9th Cir.1990) ..................................................................... 21

*Williams v. City of Carl Junction, Missouri*,
   480 F.3d 871 (8th Cir. 2007) ..................................................................... 24

*Wilson v. Garcia*,
   471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) ............................. 13

*Wright v. Anthony, et al.*,
   733 F.2d 575 (8th Cir.1984) ................................................................. 21

*Zutz v. Nelson*,
   601 F.3d 842 (8th Cir. 2010) ............................................................... 23

**Statutes**

42 U.S.C. § 1983 ............................................................................... *passim*

Neb. Rev. Stat. § 84-712.01 ..................................................................... 2

Neb. Rev. Stat. § 84-1411(1)(a) ............................................................... 3

Neb. Rev. Stat. § 84-1412 ............................................................. 3, 4, 21

Nebraska Open Meetings Act, Neb. Rev. Stat. §§ 84-1407 to 84-1414 .......................... 3

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) and (b)(1) ............................................................ 1

Fed. R. Evid. 201(b) .............................................................................. 3

Federal Rule of Civil Procedure 8 ................................................. 10, 11, 12

Link to Recording:
   https://www.youtube.com/watch?v=YN0VO4I3FUo&list=PLznBr7jR8aK
   WxFFAXV3aeXG45JzJ9Iboy&index=67 ............................................... 5, 6

Link to Recording:
   https://www.youtube.com/watch?v=5SxtP63Qxco&list=PLznBr7jR8aK
   WxFFAXV3aeXG45JzJ9Iboy&index=8 .................................................. 8

Link to Recording: https://www.youtube.com/watch?v=hdY3EmZI--
   0&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=64 ............................ 7

Link to Recording:
   https://www.youtube.com/watch?v=lcX6RZAle40&list=PLznBr7jR8aK
   WxFFAXV3aeXG45JzJ9Iboy&index=6 .................................................. 8

Link to Recording:
   https://www.youtube.com/watch?v=MQFR7eRivrg&list=PLznBr7jR8aK
   WxFFAXV3aeXG45JzJ9Iboy&index=61 ................................................. 7

Link to Recording:
   https://www.youtube.com/watch?v=Q2BXHniWu10&list=PLznBr7jR8a
   KWxFFAXV3aeXG45JzJ9Iboy&index=4 ................................................ 8

Link to Recording: https://www.youtube.com/watch?v=UER8nfOWW-o&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=1 .................................... 8

Link to Recording:
    https://www.youtube.com/watch?v=XSbd4hCCc64&list=PLznBr7jR8aK
    WxFFAXV3aeXG45JzJ9Iboy&index=63 ................................................................ 7

Link to Recording:
    https://www.youtube.com/watch?v=YN0VO4l3FUo&list=PLznBr7jR8aK
    WxFFAXV3aeXG45JzJ9Iboy&index=65 ................................................................ 7

Link to Recording:
    https://www.youtube.com/watch?v=ZwtkJisO20c&list=PLznBr7jR8aKW
    xFFAXV3aeXG45JzJ9Iboy&index=60 ...................................................................... 8

**INTRODUCTION**

Defendant, Omaha Public Schools ("OPS"), submits this brief in support of its Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and (b)(1).  Plaintiff asserts claims against OPS under 42 U.S.C. § 1983 for alleged violations of the First Amendment's right to free speech and the Fourteenth Amendment's procedural Due Process entitlements.[1]  The Complaint:  (1) fails to allege the necessary elements of a Section 1983 claim against an entity defendant, and further pleads no facts from which the existence of those elements could plausibly be inferred; (2) attempts to improperly attribute to OPS alleged constitutional violations committed by other government actors through a conclusory allegation of conspiracy between OPS, its Board of Education members, and the Omaha Police Department ("OPD"); and (3) relies on underlying alleged acts that, even if assumed true, do not constitute an actionable violation of Plaintiff's constitutional rights as a matter of law, or were allegedly suffered by persons other than Plaintiff.  The Complaint fails to state a claim on which relief can be granted as against OPS and should be dismissed with prejudice.

**BACKGROUND**

**A.      The Parties**

OPS is a school district located in Douglas County, Nebraska, offering public education to more than 50,000 students.  OPS is governed by a Board of Education that consists of nine elected board members (the "Board").  The Board holds regular meetings,

---

[1] Unlike Plaintiff's Original Complaint, filed in Case No. 8:23-cv-00455, the above-captioned action no longer asserts underlying violations of the Second Amendment's right to bear arms.

portions of which are open to the public as set forth at OPS Policy 8340.  At the time of the incidents alleged in the Complaint, the Board President was Dr. Shavonna Holman.

Plaintiff, Justin Riddle, is an individual residing in Omaha, Nebraska, and a frequent participant at OPS Board meetings.  (Compl., ¶ 3).  The operative events in the Complaint result from Plaintiff's appearance at the August 2, 2021 OPS Board meeting held at the Teacher Administration Center (the "TAC Building").  (*Id.*, ¶¶ 7-8).  The public comment portion of each Board meeting is streamed live on the OPS website, including for the meeting in question, and a video recording is made available to the public after the meeting.

In support of its Motion to Dismiss, OPS will rely on video recordings from the relevant meetings in which Plaintiff participated, the policy that governs public participation at Board meetings, and the docket sheet, court filings, and a transcript from a protection order proceeding instituted by Dr. Holman against Riddle in the District Court of Douglas County, Nebraska, CI 21-8450, where Judge Dougherty granted Dr. Holman a harassment protection order against Plaintiff for the full statutory period of one year. (Kramer Dec., ¶¶ 3-4, Exs. A-B).

Those materials are public records, which Neb. Rev. Stat. § 84-712.01 defines as "all records and documents, regardless of physical form, of or belonging to this state, any county, city, village, political subdivision, or tax-supported district in this state, or any agency, branch, department, board, bureau, commission, council, subunit, or committee of any of the foregoing," unless exempted by statute.  Furthermore, the documents reflect facts not subject to reasonable dispute, both because they are generally known within the Court's jurisdiction and because they can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  OPS thus requests that the Court take judicial notice of the same, and consider them in evaluation of the Motion to Dismiss.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999) ("A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6)."); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (evaluating filings from another case in support of a motion to dismiss); *Sanimax USA, LLC v. City of S. St. Paul*, 496 F. Supp. 3d 1285, 1292 (D. Minn. 2020) (stating that a court "may consider transcripts of public hearings as 'matters of public record'" while refraining from evaluating the testimonial statements within the record).

## B.    Public Participation at OPS Board Meetings

OPS Board meetings are subject to the Nebraska Open Meetings Act, Neb. Rev. Stat. §§ 84-1407 to 84-1414.  The Act requires that public boards provide advance notice of their meetings to facilitate public participation.   Neb. Rev. Stat. § 84-1411(1)(a). Notably, the Act unambiguously provides that a public body "shall require any member of the public desiring to address the body to identify himself or herself, ***including an address*** and the name of any organization represented by such person unless the address requirement is waived to protect the security of the individual."  Neb. Rev. Stat. § 84-1412(3) (emphasis added). OPS is granted the authority to implement that requirement and others through reasonable rules and regulations promulgated by the Board.  Neb. Rev. Stat. § 84-1412(2).

The rules relevant to Plaintiff's claims are set forth at OPS Policy 8346.  (Kramer Dec., ¶ 3, Ex. A).  Subpart A provides members of the public the right to attend Board

meetings, without identifying themselves as a condition of admission.  (*Id.*, Ex. A. p. 1).
Subpart E then establishes additional requirements for persons in attendance who desire
to address the Board.  (*Id.*, Ex. A, pp. 2-3).  Specifically, "[m]embers of the public will be
permitted to speak at Board meetings at which a public comment is on the Agenda."  (*Id.*).
In those instances, members of the public "may speak during the time at which the public
comment agenda item is being addressed."  (*Id.*).  While members of the public are not
required "to have their name placed on the agenda prior to the meeting in order to speak,"
they are required to complete "a Request to Be Heard" form.  (*Id.*).  The form "must be
submitted no later than five (5) minutes after the meeting has been called to order."  (*Id.*).
The Board President has the authority to determine the order of speakers, subject to the
limitation that students be granted preference to speak first.  (*Id.*).

As to the manner in which the speaker may address the Board, Subpart E
incorporates and cites the statutory command at issue verbatim:

> Once called to the podium, Nebraska Revised Statute section 84-1412(3)
> requires that members of the public identify themselves, spelling their name,
> ***stating an address*** and the name of any organization the member of the
> public is representing.  Members of the public may request that the address
> requirement be waived to protect their security by so stating on the Request
> to [B]e Heard form.

(*Id.*).  Subpart E then states that "[w]hile at the podium, the speaker shall not approach
the Board table or individual Board Members."  (*Id.*).  For both speakers and attendees,
the Board President "may order persons who are disorderly to be removed from the
meeting and/or direct the microphone be turned off."  (*Id.*, Ex. A, p. 1).

## C.   The August 2, 2021 Board Meeting

On August 2, 2021, the OPS Board convened at the TAC Building for a meeting at
which public comment was on the agenda.  Plaintiff and his mother, Cheryl Adamson,

were among those in attendance who desired to address the Board.  (Comp., ¶¶ 7-8).
Plaintiff's mother was called to the podium prior to Plaintiff, informed the Board that she
lived in Omaha, Nebraska, stated and spelled her name, and when asked to state her
address, responded that her "husband would not appreciate it."[2]  When Dr. Holman next
inquired whether Ms. Adamson was "part of OPS," she affirmed that she was and had
served as a teacher with the District.  At that time, Ms. Adamson was allowed to proceed
with her remarks.  After offering introductory comments, Ms. Adamson attempted to play
a cellphone voice recording, to which Dr. Holman reminded the speaker that OPS
"need[ed] her public comment, but not an audio of someone else's comment."  Plaintiff
himself then came to the podium to assist Ms. Adamson and played the recording over
the microphone.  As the recording was being transmitted, an OPS security official can be
seen approaching the podium, at which point Plaintiff and Ms. Adamson returned to their
seats.

Several other speakers addressed the Board next.  When Plaintiff was then called
to the podium, he stated:  "My name is Justin Riddle.  I live in Omaha.  My address is
irrelevant.  I'm not required to give it."  Board President Dr. Holman reminded Plaintiff
about the statutory requirement that the speaker state his address.  Plaintiff interrupted,
proclaiming "[i]t's not a law," and "my time will start now."  Dr. Holman then asked staff to
turn off the podium microphone.  After the microphone was quieted, Plaintiff left the
podium, turned and addressed the audience for a brief time, and then directed his
attention at Dr. Holman specifically, approaching the dais, pointing at her, and addressing

---

[2]Cheryl Adamson's remarks can be observed from 47:00 to 51:00 of the recording at the below link:
https://www.youtube.com/watch?v=YN0VO4I3FUo&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=67

her from only a few feet away.   Plaintiff was then removed from the meeting by a security official and a uniformed police officer.   A recess was taken, after which the meeting recommenced and proceeded.

In the Complaint, Plaintiff emphasizes that in addition to his mother, a former OPS school teacher, an unidentified "second speaker" was permitted to provide "extended remarks without disclosing [her] address."  (Compl., ¶ 8).  Plaintiff omits that the second speaker was a student, who was in the process of stating her address, when instructed by Dr. Holman that students were not required to give their address prior to addressing the Board.[3]  *See* OPS Board Policy 8346(E) ("Students of the Omaha Public Schools need not provide their address.").   Other than Plaintiff, Ms. Adamson, and the student speaker, every other speaker at the August 2, 2021 Board meeting complied with the address requirement and was then able to address the Board for the allotted time, irrespective of the content of their remarks.

After the August 2, 2021 Board meeting, Plaintiff claims he received calls from OPS School Resource Officer, Charles Otto, and OPD Officer, Steve Lee. (Compl., ¶¶ 10, 15, 19, Request for Relief).   Allegedly, neither officer expressed concern with Plaintiff's actions at the Board meeting.  (*Id.*).

## D.    Plaintiff's Subsequent Participation at OPS Board Meetings

Despite Plaintiff's claim that OPS engaged in an "escalated level of intimidation and suppression" against him, Plaintiff remained an active participant at OPS Board

---

[3] The student speaker's remarks can be observed from 41:32 through 47:00 of the recording at the below link:
https://www.youtube.com/watch?v=YN0VO4I3FUo&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=67

meetings.  (Compl., ¶ 3).  Even following Plaintiff's removal from the August 2, 2021 meeting, he appeared and actively participated at each of the following four meetings.  In each subsequent instance, Plaintiff provided his name and address, and was then allowed the allotted time for public comment.  Below is a chart listing the Board meetings at which Plaintiff has participated as a speaker since the August 2, 2021 meeting, indicating the time on the recording at which Plaintiff's comments can be observed, and a link to the recording for ease of reference.

|   | Summary Chart of Justin Riddle's Participation at OPS Board Meetings From the August 2, 2021 Meeting to Present |
|---|---|
| 1 | Date: August 2, 2021<br>Provided Name and Address: No<br>Approximate Time of Comments: 58:18 to 100:09<br>Link to Recording:<br>https://www.youtube.com/watch?v=YN0VO4l3FUo&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=65. |
| 2 | Date: August 9, 2021<br>Provided Name and Address: Yes<br>Approximate Time of Comments: 18:00 to 20:55<br>Link to Recording: https://www.youtube.com/watch?v=hdY3EmZI--0&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=64. |
| 3 | Date: August 16, 2021<br>Provided Name and Address: Yes<br>Approximate Time of Comments: 2:26:00 to 2:31:40<br>Link to Recording:<br>https://www.youtube.com/watch?v=XSbd4hCCc64&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=63. |
| 4 | Date: Sept. 9, 2021<br>Provided Name and Address: Yes<br>Approximate Time of Comments: 1:49:00 to 1:54:00<br>Link to Recording:<br>https://www.youtube.com/watch?v=MQFR7eRivrg&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=61. |
| 5 | Date: Sept. 20, 2021<br>Provided Name and Address: Yes<br>Approximate Time of Comments: 45:14 to 50:9 |

| | |
|---|---|
| | Link to Recording: https://www.youtube.com/watch?v=ZwtkJisO20c&list=PLznBr7jR8aKWxFFAX V3aeXG45JzJ9Iboy&index=60. |
| 6 | Date: Sept. 7, 2023 Provided Name and Address: Yes Approximate Time of Comments: 40:00 to 45:04 Link to Recording: https://www.youtube.com/watch?v=5SxtP63Qxco&list=PLznBr7jR8aKWxFFA XV3aeXG45JzJ9Iboy&index=8. |
| 7 | Date: Sept. 21, 2023 Provided Name and Address: Yes Approximate Time of Comments: 14:25 to 19:41 Link to Recording: https://www.youtube.com/watch?v=lcX6RZAle40&list=PLznBr7jR8aKWxFFAX V3aeXG45JzJ9Iboy&index=6. |
| 8 | Date: Oct. 16, 2023 Provided Name and Address: Yes Approximate Time of Comments: 32:28 to 38:00 Link to Recording: https://www.youtube.com/watch?v=Q2BXHniWu10&list=PLznBr7jR8aKWxFF AXV3aeXG45JzJ9Iboy&index=4. |
| 9 | Date: Nov. 13, 2023 Provided Name and Address: Yes Approximate Time of Comments: 39:00 to 44:40 Link to Recording: https://www.youtube.com/watch?v=UER8nfOWW-o&list=PLznBr7jR8aKWxFFAXV3aeXG45JzJ9Iboy&index=1. |

## E.    The Harassment Protection Order

Plaintiff anchors the alleged underlying violations of the Fourteenth Amendment in a protection order.   (Compl., ¶¶ 10, 18-19).   Plaintiff is referencing the harassment protection order imposed against him in favor of former Board President Dr. Holman, which was requested in her personal capacity.   (Kramer Dec., ¶ 4, Ex. B) (District Court of Douglas County, Nebraska, Case No. CI 21-8450).

Dr. Holman requested a protection order on August 23, 2021, after the encounter with Plaintiff at the August 2, 2021 OPS Board meeting.   (*Id.*).   Judge Dougherty entered

8

the protection order ex parte, and Plaintiff was served with a copy by the Douglas County Sheriff. (*Id*.). Plaintiff subsequently requested a hearing to contest the order, as the applicable state procedure allowed. (*Id*.). On September 16, 2021, a hearing was held. (*Id*.). Plaintiff did not subpoena any witnesses, but both Dr. Holman and Plaintiff appeared and presented evidence. (*Id*.). Following the hearing, Judge Dougherty entered an order extending the harassment protection order for a period of one year from the original date of entry. (*Id*.). Plaintiff did not appeal the ruling. (*Id*.).

**F.    The Lawsuits**

This is Plaintiff's second lawsuit concerning the above events*. See Justin Riddle v. Omaha Public Schools*, United States District Court for the District of Nebraska, Case No. 8:23-cv-00455.   The earlier action likewise sought relief under 42 U.S.C. § 1983 against OPS as an entity alone, but claimed that in addition to the First and Fourteenth Amendment, the District also violated Plaintiff's Second Amendment right to bear arms. Plaintiff voluntarily dismissed the earlier action after OPS filed a motion to dismiss, but then filed the above-captioned action which was reassigned to this Court as related to the first lawsuit.

As before, Plaintiff alleges the quieting of his microphone at the August 2, 2021 OPS Board meeting, his subsequent removal from that meeting, and his purported blocking on the social media accounts of various OPS employees and Board members violated his right to free speech. (Compl., ¶¶ 7-9, 13-17). In a single conclusory sentence, Plaintiff contends that the District "repeatedly restricted Plaintiff's ability to speak at Board meetings . . ." (*Id*., ¶ 6). Plaintiff provides no additional facts regarding the dates or details of any alleged subsequent incident. (*Id*., ¶¶ 1-22).

9

Plaintiff further claims the harassment protection order issued in favor of Dr. Holman violated his Fourteenth Amendment procedural Due Process rights.  (*Id*., ¶¶ 18-19).  In support, Plaintiff alleges the protection order was "baseless," in part because Officer Otto did not testify, and Dr. Holman allegedly "waited" until after Officers Lee and Otto had contacted Plaintiff to file for a protection order.  (*Id*., ¶¶ 10, 15, 18-19).

Finally, Plaintiff contends that two alleged phone calls by Officers Otto and Lee constitute an attempt to intimidate Plaintiff and infringe on his First Amendment rights, attributable to OPS through a conspiracy between the District, the Board, and OPD.  (*Id*., ¶¶ 20-22).  The alleged conspiracy Plaintiff further attempts to support through allegations regarding "unwarranted home visits" to persons other than Plaintiff.  (*Id*., ¶¶ 15, 20).

Despite only seeking nominal damages of $1000 in the minimum amount for the alleged violations of Plaintiff's constitutional rights, the Complaint further requests compensatory damages of $250,000, $750,000 in punitive damages and broad-ranging injunctive relief.  (*Id.*, Prayer for Relief).

## ARGUMENT

### A.    THE APPLICABLE PLEADING STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief."  To meet the standard and survive a motion to dismiss, a plaintiff must satisfy the familiar plausibility threshold established in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In *Twombly*, which involved an alleged antitrust conspiracy, the U.S. Supreme Court rejected the previous rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court declared that this "no set of facts" standard had "earned its retirement" and would be "best forgotten as an incomplete, negative gloss on a pleading standard." *Twombly*, 550 U.S. at 563. Under *Twombly*, a complaint must present enough facts to state a claim for relief that is "plausible on its face." *Id*. at 570. Thus, even though Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must still give defendant fair notice of the claim: "labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 565; *Iqbal*, 556 U.S. at 678. Instead, the plaintiff must plead facts indicating that "success on the merits is more than a 'sheer possibility.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (internal citations and quotations omitted).

In *Iqbal*, the U.S. Supreme Court explained that *Twombly* was based on a general application of Federal Rule of Civil Procedure 8, and thus the *Twombly* pleading standard applies to "all civil actions." 556 U.S. at 684. *Iqbal* also highlighted that, although a court must accept as true all of the factual allegations contained in a complaint, it need not accept as true legal conclusions couched as factual allegations. *Id*. at 678-79. *Iqbal* recognized that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions" or allegations simply reciting the elements of a cause of action. *Id*.

Plaintiff is appearing in this case without counsel.  "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, "[t]hough pro se complaints are to be construed liberally . . . they still must allege sufficient facts to support the claims advanced."  *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004); *Sandknop v. Missouri Dep't of Corr.*, 932 F.3d 739, 741 (8th Cir 2019) (same).  The *Stone* court explained:

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.  That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

364 F.3d at 915.  The court need "not supply additional facts, nor . . . construct a legal theory for plaintiff that assumes facts that have not been pleaded."  *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).  Even in a pro se pleading, the complaint must include sufficient facts to "nudge[ ] the claims" across the line "from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  The Court should address OPS' Motion to Dismiss and the plausibility of Plaintiff's allegations from that perspective.

**B.   PLAINTIFF FAILED TO PLEAD NECESSARY ELEMENTS AND PLAUSIBLE FACTS SUPPORTING ANY ENTITY LIABILITY OF OPS UNDER 42 U.S.C. § 1983**

The liability of OPS as an entity defendant under Section 1983 is governed by the standard established in the line of cases starting with *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  The Complaint fails to aver the necessary facts for entity liability under that standard.

Section 1983 creates no substantive rights, but merely provides a remedy for the deprivation of existing constitutional or statutory protections. *Wilson v. Garcia*, 471 U.S. 261, 278, 105 S.Ct. 1938, 1948, 85 L.Ed.2d 254 (1985). To prevail under Section 1983, a plaintiff must establish the following elements: "(1) the defendant[] must act under color of state law; (2) the defendant's actions must be intentional; and (3) the defendant's actions must cause the deprivation of the plaintiff's rights." *Chapman v. Musich*, 726 F.2d 405, 407 (8th Cir.1984), cert. denied, 469 U.S. 931, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984).

Furthermore, Section 1983 precludes vicarious liability under the doctrine of *respondeat superior*. "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Those instances are limited to constitutional violations that resulted from (1) an "official municipal policy," (2) "an unofficial custom," or (3) "a deliberately indifferent failure to train or supervise." *Corwin v. City of Indep., MO.*, 829 F.3d 695, 699–700 (8th Cir. 2016) (citing *Monell,* 436 U.S. at 691, 98 S.Ct. 2018; *City of Canton*, 489 U.S. at 389, 109 S.Ct. 1197). Those limitations apply to a school district defendant, where "rigorous standards of culpability and causation must be applied to ensure that the [school district] is not held liable solely for the actions of its employees." *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 778 (8th Cir. 2001) (internal citations omitted).

"Policy" and "custom" are not synonymous. "Policy" is defined as "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Conversely, "custom" denotes "(1) the existence of a continuing,

13

widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; [and] (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct . . ." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014). "A single incident normally does not suffice to prove the existence of a municipal custom." *Mettler*, 165 F.3d at 1205. Both "policy" and "custom" are high bars that require a plaintiff to show that a "school [district's] practices . . . have become 'so permanent and well settled' as to have the effect and force of law." *Jane Doe A. v. Special School District of St. Louis*, 901 F.2d 642, 646 (citing *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036).

Lastly, a plaintiff may attempt to attribute constitutional violations to a municipal entity due to its failure to properly train or supervise its employees. In that context, a plaintiff must similarly show that the "failure to train ... employees in a relevant respect evidences a deliberate indifference to the rights of the [plaintiff]." *Thelma D. By & Through Delores A. v. Bd. of Educ. of City of St. Louis*, 934 F.2d 929, 934 (8th Cir. 1991).

Imbedded in the definitions of a "custom" and a "failure to train or supervise" is thus the requirement that the plaintiff prove deliberate indifference on behalf of the municipal defendant. The Eighth Circuit has addressed the standard with respect to a school district defendant, emphasizing that the plaintiff "must offer evidence that the school district 'had notice that [their] procedures were inadequate and likely to result in a violation of constitutional rights.'" *S.J. v. Kansas City Missouri Pub. Sch. Dist.*, 294 F.3d 1025, 1029 (8th Cir. 2002) (quoting *Thelma D., 934 F.2d at 934). The *S.J.* Court indicated that the requisite "notice of the inadequacy of their procedures" may be shown in "two different ways." *Id.* A plaintiff "may show that the failure to train employees 'is so likely to result in

14

a violation of constitutional rights that the need for training is patently obvious.'"  *Id*. (quoting *Thelma D.*, supra).  Alternatively, the claimant may prove that "a pattern of misconduct indicates that the school district's . . . responses to a regularly recurring situation are insufficient to protect the [plaintiff's] constitutional rights."  *Id*.  (quoting *P.H. v. School Dist. of Kansas City,* 265 F.3d 653, 660 (8th Cir.2001)).  Irrespective of whether the plaintiff predicates his claim on alleged policy, custom, or a failure to train or supervise, those actions themselves must be the "moving force" behind the underlying constitutional violation.  *Holscher v. Mille Lacs Cnty.*, 924 F. Supp. 2d 1044, 1054 (D. Minn. 2013).

A motion to dismiss is an appropriate procedural vehicle to determine whether a plaintiff has plausibly satisfied the rigorous standard required for a municipal entity's liability under Section 1983.  *See Lee v. Pine Bluff Sch. Dist.*, 472 F.3d 1026, 1029 (8th Cir. 2007) (affirming dismissal because "the complaint alleged no policy or custom of the district that caused an alleged constitutional violation."); *D.B. v. Hargett*, No. CIV. 13-2781 MJD/LIB, 2014 WL 1371200, at *6 (D. Minn. Apr. 8, 2014) (same); *Larsen v. Papillion La Vista Cmty. Sch. Dist.*, No. 8:23CV190, 2023 WL 7183795, at *5 (D. Neb. Nov. 1, 2023) (same).

Plaintiff's allegations do not state a plausible Section 1983 claim against OPS.  The Complaint identifies no OPS policy, custom, or failure to train or supervise its employees that could serve as the moving force behind the alleged constitutional violations suffered by Plaintiff.  (Compl., ¶¶ 1-22).  As such, the Complaint fails to state a claim as against OPS.

That holds true even when the Complaint is interpreted liberally.  Because Plaintiff identifies no OPS policy as a predicate to the constitutional violations he allegedly

15

suffered, Plaintiff would have had to allege sufficient facts regarding an underlying custom or failure to train or supervise, sufficient in degree to plausibly allege the District's tacit authorization of the Plaintiff's alleged constitutional violations or deliberate indifference to its occurrence.  *Snider*, supra.  In that regard, Plaintiff only conclusorily alleges that the District engaged in a "pattern of unconstitutional conduct."  (Comp., ¶ 1). The underlying factual allegations, however, emanate from only limited and isolated operative events: (1) the quieting of Plaintiff's microphone at and his subsequent removal from a single Board meeting, followed by two phone calls from OPD Officers Lee and Otto; (2) the purported blocking on three social media accounts; and (3) the harassment protection order sought by Dr. Holman individually.  (*Id*., ¶¶ 1-22).  Those events alone, even if presumed true, do not allege a pattern of misconduct by OPS itself in response to a regularly recurring situation sufficient for OPS as an entity to have violated Plaintiff's constitutional rights.  *S.J.*, supra.    To the contrary, following the August 2, 2021 Board meeting, Plaintiff continued to be an active participant at OPS Board meetings, on his voluntarily compliance with the statutory requirement to state his name and address.  No underlying widespread pattern of conduct on behalf of the District could plausibly be inferred to attribute the alleged constitutional violations by individual OPS employees, Board members, or OPD police officers to the District itself.  Tellingly, Plaintiff has not pleaded the requisite notice upon OPS for any of the alleged constitutional violations that could support the necessary finding of tacit authorization or deliberate indifference.  (Compl., ¶¶1-22).

In sum, the facts as averred do not raise even a remote expectation that imposing the burden of discovery upon OPS, its employees and OPS Board members will reveal

evidence that the alleged constitutional violations resulted from an OPS policy, custom, or failure to train or supervise its staff.  The Complaint thus fails to state a plausible Section 1983 action against OPS as an entity defendant, and should be dismissed.

**C.    PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE CONSPIRACY TO IMPUTE ALLEGED ACTIONS OF THIRD-PARTY GOVERNMENT ACTORS TO OPS AND FURTHER CANNOT RELY ON ALLEGED CONSTITUTIONAL VIOLATIONS SUFFERED BY OTHERS.**

Even when assumed true, the Complaint's reliance on the harassment protection order and alleged actions by OPD fails to support a plausible Section 1983 claim against OPS.  Those actions were not taken by the District.  Plaintiff implicitly concedes as much in his pleading by attempting to impute those alleged acts to OPS through a conspiracy between OPS, the OPS Board, and OPD.  (Comp., ¶¶ 20-22).  The Complaint does not contain the factual specificity necessary to support such a cause of action.

The pleading requirements for a conspiracy claim are onerous.  "To prove a [Section] 1983 conspiracy claim against a particular defendant, the plaintiff must show: [1] that the defendant conspired with others to deprive him or her of a constitutional right; [2] that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and [3] that the overt act injured the plaintiff."  *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999).  Moreover, the conspiracy element itself requires a plaintiff to "allege specific facts suggesting that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end."  *Duvall v. Sharp*, 905 F.2d 1188, 1189 (8th Cir. 1990).

When those specific pleading requirements are unsatisfied, the complaint fails to state a plausible conspiracy claim under Section 1983.  *See Jones v. Nebraska Dep't of Correction Servs.*, No. 8:20CV365, 2021 WL 490388, at *8 (D. Neb. Feb. 10, 2021)

17

("Plaintiff's Complaint continually parrots the phrase 'in this civil conspiracy against Plaintiff,' but provides no particularity, specifics, or material facts describing an agreement and an overt injury to him."); *Barnes v. Smith*, 654 F. Supp. 1244, 1247 (E.D. Mo. 1987) ("The plaintiff's vague allegations of a conspiracy among all law enforcement officials does not satisfy this standard."); *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 537 (8th Cir. 2014) ("The multiple contacts between Titus, the SPPF's members, and the university do not, without more, reasonably infer that they conspired to terminate [the plaintiff].").

The Complaint is devoid of even the most elementary allegations for a proper conspiracy claim. (Comp., ¶¶ 10, 20-22). Rather, Plaintiff summarily concludes that OPS and OPD conspired "to intimidate [him]," without any additional allegations from which the operative elements of a viable conspiracy claim could be inferred. (*Id*.). To state such a claim would require particularity and specifics describing an agreement to violate an identified constitutional right and a resulting injury to Plaintiff. (*Id*.). At best, Plaintiff attempts to aver the existence of such a purported agreement through the alleged contemporaneous actions taken by those entities, surmising that "there can be no accidental link between the actions." (*Id*.). Specifically, Plaintiff relies on his removal from the August 2, 2021 Board meeting, two phone calls from Officers Otto and Lee, his blocking on three social media accounts, and the harassment protection order obtained by Dr. Holman. (*Id*.). For the latter, Plaintiff does not even indicate the alleged government entity with which OPS is alleged to have conspired, or how the District itself could be responsible for a protection order granted by a state district judge in favor of its then Board President in her individual capacity. (*Id*.). Each allegation relies solely on the

alleged ongoing relationship between the implicated government entities and the presence of contemporaneous actions.  Such reliance is insufficient, as a matter of law, to nudge a claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Finally, Plaintiff cannot support a conspiracy claim, or indeed a broader actionable claim as a whole, by relying on OPS' alleged conduct directed at other third parties, such as the alleged "unwarranted home visit" by police to an unnamed student. (Compl., ¶ 15). To meet the standing requirements of Article III, "[a] plaintiff must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317, 138 L. Ed. 2d 849 (1997) (emphasis in original).  Here, those requirements are not satisfied with respect to alleged constitutional violations suffered by persons other than Plaintiff. Such violations neither caused personal injury to Plaintiff nor will relief to the Plaintiff alleviate the harms allegedly suffered.  Plaintiff therefore lacks standing to bring his Section 1983 action to the extent the claim relies on constitutional violations by OPS of other persons' purported rights.

The Complaint lacks the necessary factual assertions to plausibly plead a conspiracy between OPS and any other government actor.  Plaintiff's conclusory assertions alone are insufficient as a matter of law, and he therefore cannot rely on alleged constitutional violations committed by other government entities to support a Section 1983 claim against OPS.  Those deficiencies cannot be cured through reliance on alleged constitutional violations suffered by other non-parties.

19

**D.** **PLAINTIFF FAILED TO PLAUSIBLY ALLEGE AN UNDERLYING CONSTITUTIONAL VIOLATION**

Independent from the deficiencies set forth above, Plaintiff's claim requires an underlying constitutional violation to support relief.  The conduct complained of here does not violate the First and Fourteenth Amendment as a matter of law, and thus Plaintiff cannot plausibly allege the threshold element for a Section 1983 claim.

**i.     The Alleged First Amendment Violations**

While "the criticism of public officials lies at the heart of speech protected by the First Amendment," the right is not absolute.  *New York Times Co. v. Sullivan*, 376 U.S. 254, 269–70, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).  The First Amendment does not guarantee an individual the right to communicate his views "at all times or in any manner that may be desired."  *Heffron v. International Soc'y for Krishna Consciousness*, 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).

The public portions of school board meetings are generally considered limited public forums.  *Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012); *Brooks v. Francis Howell Sch. Dist.*, 599 F. Supp. 3d 795, 803 (E.D. Mo. 2022); *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, No. 23-CV-33-CJW-MAR, 2023 WL 6163487, at *6 (N.D. Iowa Sept. 21, 2023); *McNeally v. HomeTown Bank*, No. 21-CV-2614 (ECT/DTS), 2022 WL 2220922, at *10 (D. Minn. June 21, 2022).  When the government creates a limited forum for speech, it may impose valid time, place, and manner restrictions, so long as such regulations are "justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."  *Ward v. Rock Against*

*Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *Harmon v. City of Kansas City, Missouri*, 197 F.3d 321, 328 n. 7 (8th Cir.1999); *Wright v. Anthony, et al.*, 733 F.2d 575, 577 (8th Cir.1984).  That authority necessarily includes the removal of a disruptive attendee "to prevent his badgering, constant interruptions, and disregard for the rules of decorum."  *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 281 (3d. Cir., 2004); *White v. City of Norwalk*, 900 F.2d 1421, 1425–26 (9th Cir.1990).

OPS Policy 8346 meets the standard.  The Policy is a content-neutral time, place, and manner restriction.  The portion of the Policy at issue, that a speaker identify his or her address, is imposed by state statute.  Neb. Rev. Stat. § 84-1412(3). Those who provide their address, as highlighted by Plaintiff's own continued participation at subsequent OPS Board meetings, are provided the allotted time to convey their message. Moreover, at the August 2, 2021 Board meeting, Plaintiff was only removed after he refused to comply and became unruly, first leaving the podium area to address the audience and then directly approaching the dais in front of the Board President.  The enforcement of state law by the Board and the maintenance of orderly meetings are significant government interests, not broader than necessary, and the removal of Plaintiff by security personnel in accordance with OPS Policy 8346 was justified as a matter of law.

Furthermore, Plaintiff fails to plausibly support his allegation of selective enforcement of OPS' policy.  For example, at the August 2, 2021 meeting, both Ms. Adamson and the student speaker identified themselves as affiliated with the District, rather than as members of the general public required to provide an address.  Each

delivered messages critical of OPS.[4]   And, Plaintiff had ample alternative avenues to communicate his speech, both had he chosen to comply with OPS Policy 8346 at the August 2, 2021 OPS Board meeting and at subsequent Board meetings when he did comply with the statutory requirement.

Plaintiff likewise cannot anchor an underlying First Amendment violation in his alleged blocking on the social media accounts of Dr. Cheryl Logan, Mr. Thomas, and Dr. Holman.   (Compl., ¶ 9).   Even for an alleged blocking on social media platforms by a public official, "it is not enough that the defendant is a public official, because acts that public officials take in the ambit of their personal pursuits" do not trigger Section 1983 liability.   *Campbell v. Reisch*, 986 F.3d 822, 824 (8th Cir. 2021) (citing *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014)).   The Eighth Circuit applied those principles in *Campbell*, holding that the blocking of a constituent from an elected official's campaign account did not violate the First Amendment.   *Id*.   Plaintiff has failed to state an actionable claim under the *Campbell* framework, as the Complaint is devoid of facts necessary to confirm that those persons who blocked him from their individual accounts were acting under color of state law.   *Id.*

Most importantly, even assuming that the quieting of the microphone and Plaintiff's removal from the August 2, 2021 Board meeting and subsequent blocking on the three social media accounts violated the First Amendment, the alleged conduct is not an actionable constitutional violation under Section 1983.   To state a viable retaliation claim a plaintiff must further allege that the government took an adverse action "that would chill a person of ordinary firmness from continuing the [protected] activity," and that "there was

---

[4] Ms. Adamson was only approached by an OPS security official when Plaintiff joined her at the podium, even though Plaintiff had not yet been called to the podium and was not the speaker scheduled at that time.

a but-for causal connection between [the government action] and [plaintiff's] injury." *Brandy v. City of St. Louis, Missouri*, 75 F.4th 908, 915 (8th Cir. 2023) (citing *Quraishi v. St. Charles Cnty., Missouri*, 986 F.3d 831, 837 (8th Cir. 2021); *Laney v. City of St. Louis*, 56 F.4th 1153, 1157 (8th Cir. 2023)). To determine whether an "adverse action" would "chill a person of ordinary firmness from continuing in the activity," courts apply an "objective test" where "the question is not whether the plaintiff himself was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done." *Eggenberger v. W. Albany Twp.*, 820 F.3d 938, 943 (8th Cir. 2016) (quoting *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014)). The purpose of this "ordinary firmness" test is to protect First Amendment activity. "[I]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002).

As with previous elements of Plaintiff's claim, whether alleged actions would chill a person of ordinary firmness from continuing in the protected activity can be properly resolved as a matter of law. *See Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir. 2010) (affirming dismissal of First Amendment retaliation claim by public board member against co-member because alleged damage to public officials from defamatory comments was insufficient to chill person of ordinary firmness); *Palmore v. City of Pac.*, 851 F. Supp. 2d 1162, 1173 (E.D. Mo. 2010) (dismissing First Amendment retaliation claim due to enforcement of rule awarding only five minutes to each speaker, which neither would chill person of ordinary firmness nor chilled speaker himself who continued to attend meetings and criticize the city board and administrators); *Williams v. City of Carl Junction, Missouri*,

23

480 F.3d 871, 878 (8th Cir. 2007) (affirming summary judgment on First Amendment retaliation claim because issuance of 25 citations was insufficient to chill person of ordinary firmness from continuing protected First Amendment activity); *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) (affirming dismissal of First Amendment retaliation claim because the filing of a single retaliatory disciplinary charge would not deter a person of ordinary firmness from exercising First Amendment rights in the future).

The factual allegations concerning Plaintiff would not, as a matter of law, chill a person of ordinary firmness from engaging in protected activity.  As previously set forth, those allegations are limited to Plaintiff's removal from the August 2, 2021 Board meeting after disruptive conduct, two subsequent phone calls by police officers from which Plaintiff identifies no threatening content, the alleged blocking on three individual social media accounts, and the granting of a lawfully obtained and unappealed harassment protection order from a state court judge at the request of Dr. Holman as an individual.  (Compl., ¶¶ 1-22).  Even assuming all such actions are somehow attributable to OPS as an entity, they are not only insufficient to chill a person of ordinary firmness, they were insufficient to chill Plaintiff's own speech. No fact is more telling than Plaintiff's active participation at each of the next four Board meetings that followed the August 2, 2021 meeting.  Indeed, Plaintiff continues to be an active participant at OPS Board meetings to this day, repeatedly voicing the same opinions he now claims were somehow unconstitutionally suppressed.

### ii    The Alleged Fourteenth Amendment Violations

Alternatively to the First Amendment retaliation claim, Plaintiff predicates his Section 1983 claim on alleged violations of the Fourteenth Amendment arising from the

state court protection order proceeding.  In reality, the harassment protection order was granted following a contested hearing on the merits, which Plaintiff requested and at which he actively participated.  No actionable procedural Due Process violation resulted from a state court judge resolving a matter properly before him and reaching findings unfavorable to Riddle.

For a procedural Due Process claim under Section 1983, a plaintiff must establish three elements:  (1) "a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution," (2) a deprivation "of this protected interest within the meaning of the Due Process Clause," and (3) "that the state did not afford [the plaintiff] adequate procedural rights prior to depriving [him or her] of the[] protected interest."  *Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir.1999) (cited with approval in *Vaughn v. Ruoff,* 304 F.3d 793, 796 (8th Cir.2002)); *see also Mulvenon v. Greenwood,* 643 F.3d 653, 657 (8th Cir.2011) (quoting *Davenport v. Univ. of Ark. Bd. of Trs.,* 553 F.3d 1110, 1114 (8th Cir.2009)).

Even assuming that Dr. Holman's personal court filings are attributable to OPS, the docket in CI 21-8450 confirms that each of those Due Process elements was satisfied in the state court proceeding.  (Kramer Dec., ¶ 4, Ex. B).  Following the ex parte issuance of the order by Judge Dougherty, Plaintiff was personally served with a copy by the Douglas County Sheriff.  (*Id.*).  Plaintiff then requested a hearing to contest the order.  (*Id.*).  A hearing was held on September 16, 2021, at which Plaintiff appeared and participated, offering the evidence he wished with all relevant procedural options available, including the Court's subpoena powers.  (*Id.*).  After considering the evidence, Judge Dougherty extended the harassment protection order for the statutory duration of

25

one year from the date of filing.  (*Id*.).  Plaintiff elected not appeal the ruling, and it became final.  (*Id*.).

Unlike in his earlier Complaint, Plaintiff no longer contends that the harassment protection order was issued without notice and hearing.  Instead, he now contends that the order was "baseless," obtained on an "emergency" basis, and not supported by the testimony of Officer Otto.  (Compl., ¶¶ 10, 18-19, Prayer for Relief).  Plaintiff had ample opportunity to address all of those alleged deficiencies in the proceeding itself, both at the trial stage through subpoenaing witnesses and through an appeal of Judge Dougherty's findings.  Plaintiff cannot use Section 1983 to re-litigate those issues here.

To state a Section 1983 claim, Plaintiff needed to identify an underlying constitutional violation.  The Complaint, however, identifies conduct that as a matter of law does not violate the First and Fourteenth Amendment.  Therefore, Plaintiff cannot plausibly allege the threshold element for a Section 1983 claim, and dismissal with prejudice is appropriate.

**CONCLUSION**

For the above and foregoing reasons, OPS respectfully requests that its Motion to Dismiss be granted and the Court dismiss Plaintiff's claims in their entirety with prejudice, at Plaintiff's cost.

Dated this 10th day of January, 2024.

OMAHA PUBLIC SCHOOLS Defendant,

By:  /s/Steven D. Davidson
      David J. Kramer (#19327)
      Steven D. Davidson (#18684)
of  BAIRD HOLM LLP
      1700 Farnam St. Suite 1500
      Omaha, NE  68102-2068
      Phone: 402-344-0500
      Facsimile:  402-344-0588
      dkramer@bairdholm.com
      sdavidson@bairdholm.com

## CERTIFICATE OF COMPLIANCE

I hereby certify in accordance with the Court's Local Rule 7.1(d) that, according the 2016 version of Microsoft Word used to prepare this brief, this brief includes 8,639 words, including the caption, headings, footnotes, and quotations.

/s/Steven D. Davidson

## CERTIFICATE OF SERVICE

I hereby certify that on January 10th, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Justin Riddle
16422 Patrick Ave.
Omaha, NE 68116

/s/Steven D. Davidson

6254438.3