EXHIBIT

1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

JUSTIN RIDDLE,

        Plaintiff,

v.

OMAHA PUBLIC SCHOOLS,

        Defendant.

Case No. 8:23-cv-00455

**DECLARATION OF DAVID J. KRAMER**

I, David J. Kramer, declare and state as follows:

1.     I am a resident of Douglas County, Nebraska, am over the age of 19 years, and make this declaration with personal knowledge of the matters set forth.

2.     I am a partner at the law firm of Baird Holm, LLP, and serve as the lead outside counsel for the Omaha Public Schools ("OPS").

3.     Attached as **Exhibit "A"** is a true and correct copy of OPS Policy 8346.

4.     Attached as **Exhibit "B"** are true and correct copies of the docket sheet, the pleadings, the order, and the transcript from the hearing for a harassment protection order by then OPS Board President, Dr. Shavona Holman, against Justin Riddle, Douglas County District Court, CI 21-8450.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct.

Executed this 27th day of November, 2023, in Omaha, Nebraska.

David J. Kramer

EXHIBIT
A

**8346 - Public Participation at Board Meetings**

**Last Updated Date:** 10/17/2022

**Adoption Date:** 08/04/2014

**Revision History:** 11/15/2021

**A. Attend:**

Members of the public shall be permitted to attend board meetings. They will not be required to identify themselves as a condition for admission to the meeting.

With the prior approval of the President of the Board, the Board may allow advisors, consultants, and other persons who are not Board members to appear at the meeting via telephone or other similar means.

The President of the Board has the authority to assure that people conduct themselves in an orderly manner at the meeting.  Undue interruption or other interference with the orderly conduct of business will not be allowed.  The President of the Board may order persons who are disorderly to be removed from the meeting and/or to direct the microphone be turned off.

**Legal Reference:** § 84-1411 (3) and (6); § 84-1412 (1) and (3)

**B. Hear:**

The Board will, upon request, make a reasonable effort to accommodate the public's right to hear the discussion and testimony presented at the meeting.

**Legal Reference:** § 84-1412 (7)

**C. Record:**

Members of the public may use recording devices (tape recorder, video camera, etc.) to record any part of a meeting of a public body, except for closed sessions.  The

President or the Board /Secretary shall control the placement of any recording device.

**Legal Reference:** § 84-1412 (1)

**D. Access to Written Materials:**

At least one copy of all reproducible written material to be discussed at an open meeting will be made available at the meeting for examination and copying by members of the public.

**Legal Reference:** § 84-1412 (8)

**E. Speak:**

Members of the public will be permitted to speak at Board meetings at which a public comment is on the Agenda and may speak during the time at which the public comment agenda item is being addressed. Members of the public may also speak when invited to make a presentation or when recognized by the chair.  The Board is not required to allow members of the public to speak at each meeting. However, the Board will not forbid public participation at all meetings.

Members of the public will not be required to have their name be placed on the agenda prior to the meeting in order to speak about items on the agenda. However, members of the public who desire to address the Board during public comment are required to complete a Request to be Heard form.  The Request to be Heard form must be submitted no later than five (5) minutes after the meeting has been called to order. The President of the Board for the meeting shall have the authority to determine the order of public speakers, while making an effort to allow speakers who are students to speak first.  Members of the public are asked to remain seated in the audience until called to the podium by the President or chair for the meeting.  Once called to the podium, Nebraska Revised Statute section 84-1412(3) requires that members of the public identify themselves, spelling their name, stating an address and the name of any

organization the member of the public is representing.  Members of the public may request that the address requirement be waived to protect their security by so stating on the Request to be Heard form.  Students of the Omaha Public Schools need not provide their address.  While at the podium, the speaker shall not approach the Board table or individual Board Members.  Members of the public who have documents or written testimony they wish to submit/distribute to the Board should state that from the podium and a member of the District staff will take such items for distribution to the Board Members.

The maximum permitted duration for individual speakers is five (5) minutes. and the maximum permitted duration for the public comment session will be one (1) hour.   The Board Secretary will let speakers know when they have one minute remaining and when they have 30 seconds remaining.  Once the five minutes have passed, the microphone will be turned off and the member of the public will be asked to leave the podium.

Speakers will be permitted to address the Board consistent with free speech rights.  However, offensive language, defamatory remarks, and hostile conduct will not be tolerated.  If the subject of public comment is related to a particular student or staff member, members of the public are requested not to identify the student or staff member and instead provide that information to the Board Secretary who will assist the Board in looking into the matter.  Allegations or complaints against an employee of, or volunteer for, the District shall not be made for the first time at a public Board meeting without having followed the District's applicable complaint procedure.

**Legal Reference:** § 84-1412 (1) (2) and (3)

**F.  Written Comment:**

Members of the public will be permitted to provide written comment whether or not they

speak at a meeting.  The Board Secretary will distribute the written comment to all Board members.

Official Nebraska Government Website

# Nebraska Judicial Branch

EXHIBIT

**B**

## Case Summary

In the District Court of Douglas County
The Case ID is  CI 21 0008450
                    Shavonna L Holman v. Justin Riddle
The Honorable Duane C Dougherty, presiding.
Classification: Protection Order-Harassment
Filed on 08/23/2021
This case is Closed as of 09/16/2021
   It was disposed as  Tried to Court

## Parties/Attorneys to the Case

|           Party           |           Attorney        |
|---------------------------|---------------------------|
| Petitioner ACTIVE         |                           |
|   Shavonna L Holman       |   Cameron C Finke         |
|   8269 Girard Street      |   1500 Woodmen Tower      |
|                           |   1700 Farnam St.         |
|   Omaha          NE 68122 |   Omaha          NE 68102 |
|                           |   402-344-0500            |
| Respondent ACTIVE         |                           |
|   Justin Riddle           |                           |
|   16422 Patrick Avenue    |                           |
|   Omaha          NE 68116 |                           |

## Court Costs Information

| Incurred By | Account | Date | Amount |
|-------------|---------|------|--------|

## Financial Activity

No trust money is held by the court
No fee money is held by the court

## Register of Actions

10/17/2022 Order
          This action initiated by Duane C Dougherty
   Disp of Exh
     NS eNotice Certificate Attached
          Image ID  N22290CCGD01

09/16/2021 Cert-Service
          This action initiated by party Justin Riddle
   mp  Mailed to rsp 9-16-21

          Image ID  002232820D01

09/16/2021 PO-Har/Aftr Hrg-Ex Parte - was issued on Justin Riddle
          The document number is 00754922
          This action initiated by Duane C Dougherty

```
Document Number    754922
    mp
          Image ID  002232819D01


09/15/2021 Appearance of Counsel
           This action initiated by party Shavonna L Holman
    tk  atty Cameron C Finke
          Image ID  N21258BBQD01


08/30/2021 Prot Ord/Sched Hrg
    tk  see doc image for court date


          Image ID  002227179D01


08/30/2021 Opportunity to Be Heard


08/30/2021 Request Hrg-Harassment PO
           This action initiated by party Justin Riddle
    tk
          Image ID  002227173D01


08/26/2021 Photocopy Made
          Image ID  D00750609D01


08/25/2021 Return-Prot Order
           The document number is 00750241
           Served on 08/25/2021
           Personal Service on Justin Riddle


          Image ID  D00750551D01


08/24/2021 E-Mailed PDF Document
    HARPOEX  Document Number   750241  Party to Case
    E-mailed to the Petitioner


08/24/2021 PO-Har/Ex Parte - was issued on Justin Riddle
           The document number is 00750241
           This action initiated by Duane C Dougherty
    Document Number   750241
          Image ID  D00750241D01


08/23/2021 Social Security No./Gender/DOB DC6:
           This action initiated by party Shavonna L Holman


08/23/2021 Praecipe-Prot Order


           This action initiated by party Shavonna L Holman
    JB
          Image ID  002221732D01


08/23/2021 Comp/Affd Obtain Harassment PO
           This action initiated by party Shavonna L Holman
    JB
          Image ID  002221729D01
```

Judges Notes

```
09/16/2021
Dougherty,Duane,C.
Matter came on for hearing.  Petitioner appeared in person and with
counsel Jill Robb Ackerman.  Respondent appeared personally as a self
represented litigant.  Testimony given.  Exhibits offered and received.
Signed Harassment Protection Order. (Ct. Rptr. Victoria Retzlaff).
```

| Nebraska State Court Form REQUIRED<br><br>DC 19:2  Rev. 01/20<br>Neb. Rev. Stat. § 28-311.09 | **PETITION AND AFFIDAVIT TO OBTAIN HARASSMENT PROTECTION ORDER** | <br>002221729D01 |
| --- | --- | --- |

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

Shavonna Leigh Holman
_____
Petitioner,

_____
Additional Petitioner/Minor Child(ren),

_____
Additional Petitioner/Minor Child(ren),

vs.

Justin Riddle
_____
Respondent.

Case No. **CI 21-8450**

### PETITION AND AFFIDAVIT TO OBTAIN HARASSMENT PROTECTION ORDER

ASSIGNED TO _Dougherty_

1.  I, Shavonna Leigh Holman _____, am the petitioner in this case. I am petitioning for a harassment protection order pursuant to Neb. Rev. Stat. § 28-311.09.

    I am filing this petition on behalf of:

    ☒ Myself. I have been harassed.
    ☐ Myself and additional petitioner(s) who have been harassed and whose name(s) is/are shown after mine in the caption of this petition. My relationship to the additional petitioner(s)/minor child(ren) is/are:☐ custodial parent, ☐ guardian, ☐ other:_____
    ☐ Only on behalf of the additional petitioner(s) who have been harassed and whose name(s) is/are shown after mine in the caption of this petition. My relationship to the additional petitioner(s)/minor child(ren) is/are: ☐ custodial parent, ☐ guardian, ☐ other:_____.

    AND:

    ☒ I am 19 or older or legally emancipated   **OR**   ☐ I am a minor and_____years of age.
    ☐ I do not speak English. The language that I speak is:_____.

2.  Check Only One:

    ☐ I have received address protection from the Secretary of State under the Address Confidentiality Program.(Service of any court process shall be made by mailing two copies of the process to the Office of Secretary of State, Address Confidentiality Program, Suite 2300, State Capitol Building, Lincoln, NE, 68509)

    ☐ I am living at a safe house or shelter for my own protection.  Pursuant to Neb. Rev. Stat. § 29-4303, I cannot identify the name, address, location or phone number of the facility.

    ☒ My address is:

    | 8269 Girard Street | Omaha | NE | 68122 |
    | --- | --- | --- | --- |
    | (Street or Route/Box) | (City) | (State) | (ZIP code) |

    Mailing address (if different):

    | _____ | _____ | _____ | _____ |
    | --- | --- | --- | --- |
    | (Street or Route/Box) | (City) | (State) | (ZIP code) |

#27 **FILED**
IN DISTRICT COURT
DOUGLAS COUNTY NEBRASKA

AUG 23 2021

3.  ☐ I do not agree to receive notification by email.
    ☒ **I agree** to receive notification by email.
    **email address:** sleigheris@gmail.com

    **NOTE: By providing this email address, I acknowledge that I am aware that this information will be public record. I also understand that I will only receive email communications regarding this case from the court.**

4.  I am filing this petition against the respondent whose age is:_____ and who resides at:

    | 16422 Patrick Avenue | Omaha | NE | 68116 |
    |---|---|---|---|
    | (Street or Route/Box) | (City) | (State) | (ZIP code) |

    Mailing address (if different)

    | | | | |
    |---|---|---|---|
    | (Street or Route/Box) | (City) | (State) | (ZIP code) |

    _____
    (Phone number)

    ☐ The respondent does not speak English. The language that the respondent speaks is:_____.

    My relationship to the respondent is: other  ▼

5.  The respondent is a person who has willfully harassed me and has engaged in a knowing and willful course of conduct directed at me which seriously terrifies, threatens, or intimidates me and serves no legitimate purpose.

6.  To my knowledge, The respondent and I  ☐ have  or  ☒ have not been involved in past or current court cases together. (i.e., divorce, paternity, custody, juvenile, criminal or protection orders) If so: when, where, type of case, name of court(s), and case number(s).

7.  I hereby ask the court to enter a protection order (mark all that apply):
    ☒ prohibiting the respondent from imposing any restraint upon the person(s) seeking protection.
    ☒ prohibiting the respondent from harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of the person(s) seeking protection.
    ☒ prohibiting the respondent from telephoning, contacting, or otherwise communicating with the person(s) seeking protection.

8.  Pursuant to Neb. Rev. Stat. § 25-2740, I request to have a  ☐ **District Court Judge,** or a  ☐ **County Court Judge** preside over this proceeding. (I understand this request may not be granted.).

9.  The dates or approximate dates and facts of the most recent series of acts and the most severe incident or incident(s) of harassment toward the person(s) seeking protection are (Please write a brief but detailed description.):

    A. Date/Time:_____ August 9th  2021  Description:

    I am an elected official and I had to have this individual removed from our public meeting on August 9th by security and the police for not following meeting regulations, outbursts, and leaving the podium and approaching the dais, where I and my colleagues were sitting. Mr. Riddle began trolling me on Twitter through my work and elected official postings.

**Page 2 of 4**
Petition and Affidavit to Obtain

B. Date/Time: _August 17, 2021_____ Description:

Aug 17th email, "if no one has replied to my by tomorrow at noon, you can expect the next level of pressure. If you don't see what happens in 3 weeks, you don't deserve to opportunity to fix it. You have 36 hours. Individually, you are both 100% safe from exposure and off the list, if we have your word that the bullshit ends. If not, look forward to phase 2.

C. Date/Time: _____August 21, 8:42 pm _2021_ Description:

Mr. Riddle sent an email stating, "Thank you for the four of you who responded. You are officially safe. The rest of you, you will share the same fate that Cheryl and Barry will." This was the opening statement of his email.

10.   I request the court treat this Petition and Affidavit for a Harassment Protection Order as a request for a sexual assault protection order or a domestic abuse protection order if it appears to the court, based on facts contained in this Petition and Affidavit and the evidence presented at a show cause hearing, that another type of protection order is more appropriate in this case, and the court makes such findings.

11.   Additional Petitioner(s) (if needed):

**Petitioner 2** (Minor Child):

Name: _____   Age: _____   Relationship to the Respondent: _____

Residence:
☐   The address of this Petitioner is the same as my address above.
☐   This Petitioner's address is:

_____   _____   _____   _____
(Street or Route/Box)                                      (City)       (State)      (ZIP code)

**Petitioner 3** (Minor Child):

Name: _____   Age: _____   Relationship to the Respondent: _____

Residence:
☐   The address of this Petitioner is the same as my address above.
☐   This Petitioner's address is:

_____   _____   _____   _____
(Street or Route/Box)                                      (City)       (State)      (ZIP code)

Page **3** of **4**
Petition and Affidavit to Obtain
Harassment Protection Order

**Petitioner 4** (Minor Child):

Name:                                   Age:           Relationship to the Respondent:

Residence:
- ☐ The address of this Petitioner is the same as my address above.
- ☐ This Petitioner's address is:

(Street or Route/Box)                                           (City)      (State)      (Zip)

**Petitioner 5** (Minor Child):

Name:                                   Age:           Relationship to the Respondent:

Residence:
- ☐ The address of this Petitioner is the same as my address above.
- ☐ This Petitioner's address is:

(Street or Route/Box)                                           (City)      (State)      (Zip)

**Petitioner 6** (Minor Child):

Name:                                   Age:           Relationship to the Respondent:

Residence:
- ☐ The address of this Petitioner is the same as my address above.
- ☐ This Petitioner's address is:

(Street or Route/Box)                                           (City)      (State)      (Zip)

I hereby swear or affirm, under penalty of perjury, the foregoing affidavit is true.

_Signature_

Signature of Petitioner

(Name, Firm name, and Bar Number **IF** being completed by an attorney)

**(do NOT sign UNTIL THE CLERK OF THE DISTRICT COURT OR A NOTARY IS PRESENT AND WITNESSES YOU SIGNING)**

Subscribed and sworn before me on          8-23          , 20 21

_Jennifer Brey_

Clerk of the Court/Notary Public                          (Seal)

My Commission Expires:   5-30-2023

Page **4** of 4

Petition and Affidavit to Obtain
Harassment Protection Order

GENERAL NOTARY - State of Nebraska
JENNIFER BREY
My Comm. Exp. May 30, 2023

C 19:1  Rev. 09/2020
eb.Rev.Stat. §§ 42-924,
-311.09, and 28-311.11

# PROTECTION ORDER
# PRAECIPE



002221732D01

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

Shavonna Leigh Holman

_____
                                Petitioner,

_____
        Additional Petitioner/Minor Child(ren),

_____
        Additional Petitioner/Minor Child(ren),

        vs.

Justin Riddle
_____
                                Respondent.

Case No. __CI 21-8450__

# PROTECTION ORDER
# PRAECIPE

**THE CLERK OF COURT:**

ase have the Sheriff of_____ Douglas _____County serve a copy of the protection

er and/or order to show cause, petition, and request for hearing (if applicable) upon the respondent by

sonal service at any one of the following addresses:

me: 16422 Patrick Avenue

rk: _____

er locations where respondent can be found:_____

ections for service:_____

_____
ature
vonna Leigh Holman
e
_____
Number and Firm Name (attorneys only)
_____
681-4931
e

Date _August 23, 2021_____

8269 Girard Street
Street Address/P.O. Box
Omaha, NE 68122
City/State/ZIP Code

sleigheris@gmail.com
Email Address

**(If you are concealing your address or phone, do not provide them. Make separate
arrangements with the clerk.)**

#27  FILED
IN DISTRICT COURT
DOUGLAS COUNTY NEBRASKA
AUG 23 2021

in any of the following information if known.
cription of Respondent:

s: The Riddler _____

: Male _____ Age: late 40s _____ Height: 5'8 appx Weight: 180 app

Color: _____ Hair Color: dark brown _____ Race: Caucasian ____ Skin Tone: _____

ce of Birth: _____ Scars, Marks, and Tattoos: _____
_____

er Distinguishing Features: _____

ployer: _____ Work Days and Hours: _____

cription of Respondent's Vehicle:

ers Lic. No.: _____ Issuing State: _____ Expiration: _____ Year: _____

icle Lic. No.: _____ Vehicle Year: _____ Issuing State: _____ Type: _____

e: _____ Model: _____ Color(s): _____ VIN: _____

s the Respondent:

ry a weapon or keep a weapon nearby? _____ Where and what kind? _____
_____

e a history of mental illness? _____

or abuse alcohol or drugs? _____ What kind? _____

e a history of violence toward others? _____ Make threats against law enforcement? _____

er Comments:

| Image ID D00750241D01 | **EX PARTE HARASSMENT PROTECTION ORDER** | Case Number CI-21-8450 |
|---|---|---|
| Form 19-4 | | Document Number 750241 |

IN THE DISTRICT COURT OF <u>Douglas</u> COUNTY, NEBRASKA

avonna L Holman
_____
         **Petitioner**

**EX PARTE HARASSMENT PROTECTION ORDER**

.

stin Riddle
_____
         **Respondent**

**The protected party(ies) of this Order is/are:**

| | | | |
|---|---|---|---|
| 1. Shavonna L Holman | | 4. _____ | |
| 2. _____ | | 5. _____ | |
| 3. _____ | | 6. _____ | |

**THE COURT**, having received the Petition and Affidavit of the petitioner, finds that a harassment protection der pursuant to Neb. Rev. Stat. § 28-311.09 should be issued. **FURTHER**, it reasonably appears from the ecific facts included in the affidavit that irreparable harm, loss or damage will result before this matter can rd on notice, therefore, the court having jurisdiction of the parties finds that a harassment protection order uld be issued without prior notice and hearing.

**IT IS THERFORE ORDERED**, pursuant to Neb. Rev. Stat. § 28-311.09, unless otherwise dismissed or ified by order of the court, a harassment protection order against the respondent is granted for eriod of one year from the date of this order and the petitioner is granted the following relief:

  1. Respondent is enjoined from imposing any restraint upon the person or liberty of the protected
     party(ies).

  2. Respondent is enjoined from harassing, threatening, assaulting, molesting, attacking, or
     otherwise disturbing the peace of the protected party(ies).

  3. Respondent is enjoined from telephoning, contacting, or otherwise communicating with the
     protected party(ies).

If the respondent wishes to appear and show cause why this order should not remain in effect for a period of
e year, he or she shall affix his or her current address, telephone number, and signature on the **Request for**
aring form provided and return it to the clerk of the district court within ten (10) business days after servic
n him or her. This order shall remain in effect during the time prior to the hearing. Costs are waived unless
herwise ordered by the court.

TED on: <u>August 24, 2021</u>

JUDGE - Duane C Dougherty

**NOTICE TO RESPONDENT**

PURSUANT to 18 U.S.C.2265, this order is enforced in all fifty states, the District of Columbia, tribal land
U.S territories. Moreover, pursuant to 18 U.S.C.922 if a final order is entered againt you after a hearing
which you had actual knowledge and an opportunity to participate, whether or not you actually participated,
if this court order restrains you from harassing, stalking, or threatening an intimate partner or child of su
imate partner, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily
ury to the partner or child, you may be subject to a federal penalty for possessing, transporting, or acceptin
irearm or ammunition.

Printed on  8/24/2021 at 11:43 A.M.

**FILED BY**

| ebraska State Court Form copy is on the reverse side of C 19:4, 19:5, 19:6 and 19:7 C 19:3 Rev. 01/20 eb. Rev. Stat. § 28-311.09 | **PROTECTION ORDER INFORMATION - HARASSMENT** | |

A harassment protection order is a court order issued to a victim who has been harassed, pursuant to Neb. Rev. Stat. § 28-311.09 et seq.

In order to qualify for a harassment protection order:

- the petition shall state the events and dates of acts constituting the alleged harassment. This must include the mc recent and most severe incident(s).
- the petitioner must show that the respondent has engaged in a knowing and willful course of conduct directed at th petitioner which seriously terrifies, threatens, or intimidates the petitioner and which serves no legitimate purpose.
    - A course of conduct is defined as a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking, telephoning, contacting, or otherwise communicating with the petitioner.

A protection order may prohibit the respondent from:

- imposing any restraint upon the petitioner or family or household member, or liberty of the petitioner,
- harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of the petitioner,
- telephoning, contacting, or otherwise communicating with the petitioner.

**Once the protection order petition is granted, it may not be withdrawn except upon order of the court.**
The protection order shall be effective for one year unless otherwise modified by the court.

A court, on its own motion or at the request of the petitioner, may treat a petition for a harassment protection order as a request for a sexual assault protection order or domestic abuse protection order, if it appears from the facts in the petiti affidavit and evidence presented at a show-cause hearing that such other protection order is more appropriate.

## NOTICE TO PETITIONER

Fees to cover costs associated with the filing, issuance, or service of a protection order shall not be charged, except tha court may assess such fees and costs if the court finds that the statements contained in the application were false and that the protection order was sought in bad faith.

## NOTICE TO RESPONDENT

If there has been an **Ex Parte** Protection Order served upon you and you wish to request a hearing to show cause why the order should not remain in effect, you must request a hearing on the provided "Request for Hearing" form by completing the form and returning it to the clerk of the district court at the address listed at the bottom of the form. You must return the form within ten (10) business days after you have been served. The court will schedule a hearing within thirty (30) days after reviewing our request and shall notify you and the petitioner of the hearing date.

If there is a hearing scheduled and you wish to defend against the claims set forth in the application for a protection order, you must appear at the hearing. You are warned that if you fail to appear, the case will proceed without you and final order may be entered against you for the relief requested in the petition.

You are required to obey the terms of the protection order as soon as it is served upon you. If you disobey the terms of the protection order, you will be subject to the following **Nebraska Revised Statutes.**

**Violation of a Protection Order:** Any person convicted of violating the terms of a harassment protection order after beir served shall be subject to either Neb. Rev. Stat. § 28-311.04 or § 28-311.09(4).

If a protection order has been issued against you, the following **United States Federal Statutes** apply to the issuance of valid protection order.

**Full Faith and Credit Provision:** Pursuant to 18 U.S.C. § 2265, this order is enforceable in all fifty (50) states, the District of Columbia, tribal lands and U.S. territories. The penalties for violation of this order are determined by the existing penalty of the location in which the violation occurred. Nebraska's Harassment Full Faith and Credit provisions are found in Neb. Rev. Stat. § 28-311.10.

**Interstate Domestic Violence/Violation of a Protection Order:**

- If you travel across state or tribal borders with the intent to injure the petitioner and then intentionally commit a cri of violence causing bodily injury to the petitioner, you may be convicted of committing a federal offense under U.S.C. § 2261(a)(1). You may also be convicted of committing a federal offense if you cause the petitioner to cross st or tribal borders for this purpose. 18 U.S.C. § 2262(a)(2).
- If you travel across state or tribal borders with the intent to violate the final protection order and subsequently violate such order, you may be convicted of committing a federal offense under 18 U.S.C. § 2261(a)(1).
- You may also be convicted of committing a federal offense if you cause the plaintiff to cross state or tribal borders for this purpose. 18 U.S.C. § 2262(a)(2).

Image ID: D00750551D01 | **SERVICE RETURN** | Doc No.   750241

Return to: Douglas District Court
Case ID: CI 21   8450
Shavonna L Holman v. Justin Riddle

Received Doc.No.   750241 a Protection Order
   on  8/24/2021 at 14:30 PM.

I hereby certify that on  8/25/2021 at 14:05 PM I served Doc. No.   750241 a
Protection Order             on Justin Riddle
by Personal Service     to Justin Riddle
at 16422 Patrick Ave Omaha
as required by Nebraska state law.

**FILED BY**
Clerk of the Douglas District Court
08/25/2021

| | |
|---|---|
| Service and return | $.00 |
| Mileage | $.00 |
| Copy | $.00 |
| Miscellaneous | $.00 |
| TOTAL | $.00 |

Comments

Date:   8/25/2021 Douglas County Sheriff      /s/ Pete Giglia

e ID:D00750609D01                                          Page:            1

                   IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

HAVONNA L HOLMAN V. JUSTIN RIDDLE

ase ID: CI 21 8450


ecipients:
 havonna L Holman                   sleigheris@gmail.com

nage ID       Date       Description
00750241D01   08/24/21   PO-Har/Ex Parte



002227173D01

| STATE OF NEBRASKA<br>FORM NO. DC 19-14<br>Rev. 06/12. Neb. Rev. Stat.<br>§ 42-924 - 28-311.09 | **REQUEST FOR HEARING --**<br>**PROTECTION ORDER** | CASE NUMBER:<br><br>CI 21-8450 |
|---|---|---|

# IN THE DISTRICT COURT OF _____ DOUGLAS _____ COUNTY, NEBRASKA

Shavonna Leigh Holman
_____

_____
        Petitioner

VS.
Justin Riddle
_____
        Respondent

**REQUEST FOR
HEARING --
PROTECTION ORDER**

  I wish to request a hearing on this protection order. I understand that notice of the time and place of the hearing shall be mailed to the address below.

  ☐ I do not speak English. My language is _____

Date: _8·30·21_

_____
(Signature)

Mailing Address: _16422 Patrick Ave_
City, State, Zip Code: _Omaha, NE  68116_
Telephone: (Home) _402 813 2156_  (Work) _402 813 2156_

RETURN TO:   PROTECTION ORDER DEPARTMENT
       Clerk of the District Court
       Hall of Justice, Room #300
       Omaha, NE  68183

       or Fax to:  402-996-8493

## YOU HAVE 10 BUSINESS DAYS TO RESPOND
## FROM THE DATE OF SERVICE

#30 **FILED**
IN DISTRICT COURT
DOUGLAS COUNTY NEBRASKA

AUG 3 0 2021

JOHN M. FRIEND



002227179D01

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRAKSA

Shavonna Leigh Holman

_____

                                    Petitioner

VS.

Justin Riddle

_____

                                    Respondent

CI # 21  -  8450

## NOTICE OF HEARING

**IT IS ORDERED** that a hearing on this matter be held on September 16, 2021
at 8.30 a.m.    , Court Room # 503, 5th floor, Hall of Justice, Omaha, Nebraska, to provide the respondent
an opportunity to appear and show cause why the requested protection order should not be issued,
modified, or remain in effect.  Any protection order previously issued shall remain in effect until the
date that the hearing is actually held.

**IT IS FURTHER ORDERED** that a copy of this notice shall be mailed to both the petitioner and the
respondent at their respective addresses.

**NOTICE TO PETITIONER**:  You must appear at the place, date and time show to show cause why your
protection order should be issued, modified, or remains in effect.

Dated: August 30, 2021

/s/  Teri Knight
Deputy, CLERK OF THE DISTRICT COURT

CERTIFICATE OF SERVICE

I, the undersigned, certify that I served by mailing (by United States mail), postage prepaid, a copy of the forgoing notice
of hearing upon the petitioner and the respondent at their respective addresses shown in the request for hearing and
petition.

Dated : August 30, 2021

/s/  Teri Knight
SIGNATURE

#30   FILED
IN DISTRICT COURT
DOUGLAS COUNTY NEBRASKA
AUG 3 0 2021
JOHN M. FRIEND
CLERK DISTRICT COURT

*** EFILED ***
Case Number: D01CI210008450
Transaction ID: 0014278398
Filing Date: 09/15/2021 04:15:36 PM

**IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA**

SHAVONNA LEIGH HOLMAN,

            Petitioner,

v.

JUSTIN RIDDLE,

            RESPONDENT,

**CASE NO. CI 21-8450**

**ENTRY OF APPEARANCE**

COME NOW Cameron C. Finke and Jill Robb Ackerman of Baird Holm LLP and hereby enter their appearance as attorneys of record for Petitioner, Sharvonna Leigh Holman, in the above-captioned action.

Petitioner hereby requests that service of all filings, notices, discovery, and all other papers to which it is entitled be served upon the individuals at the address set forth below and that the following be added to the Court's docket:

        Cameron C. Finke
        Jill Robb Ackerman
        Baird Holm LLP
        1700 Farnam Street
        Suite 1500
        Omaha, NE 68102-2068
        cfinke@bairdholm.com
        jrackerman@bairdholm.com

Dated this 15th day of September, 2021

SHAVONNA LEIGH HOLMAN, Petitioner,

By:  /s/Cameron C. Finke
      Cameron C. Finke (NE# 26327)
      Jill Robb Ackerman (NE# 17623)
of  BAIRD HOLM LLP
      1700 Farnam Street, Suite 1500
      Omaha, NE  68102-2068
      Phone: 402-344-0500
      Email: cfinke@bairdholm.com
             jrackerman@bairdholm.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of September, 2021, the above and foregoing Entry of Appearance was filed with the Clerk of the Court using the JUSTICE on-line filing system (www.nebraska.gov/courts/efile/) and a true and correct copy of the above and foregoing was served via U.S. Mail postage prepaid to Respondent as follows:

Justin Riddle
16422 Patrick Ave
Omaha, NE 68116

/s/Cameron C. Finke

# Certificate of Service

I hereby certify that on Wednesday, September 15, 2021 I provided a true and correct copy of the Appearance of Counsel to the following:

Holman,Shavonna,Leigh represented by Pro Se Party (Bar Number: 2) service method: No Service

Riddle,Justin, service method: First Class Mail

Signature: /s/ Cameron Crawford Finke (Bar Number: 26327)

REQUIRED
19:5    Revised 01/20
b. Rev. Stat. § 28-311.09
cument # 754922

**HARASSMENT
PROTECTION ORDER**


002232819D01

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

avonna Leigh Holman
_____
Petitioner,

_____
Additional Petitioner/Minor Child(ren),

_____
Additional Petitioner/Minor Child(ren),

stin Riddle
_____
Respondent.

Case No. CI21-8450 _____

**HARASSMENT PROTECTION ORDER
(After Hearing, Ex Parte Order Issued**

e protected party(ies) of this Order is/are:

1. Shavonna Leigh Holman _____     4. _____
2. _____     5. _____
3. _____     6. _____

THIS MATTER came on before the court, pursuant to Neb. Rev. Stat. § 28-311.09, upon the petitio
d Request for Hearing. The petitioner (☒ **was/were**) (☐ **was/were not**) present in court (☐ **with**
unsel, Jill Robb Ackerman _____). The respondent ( ☒ **did**) (☐ **did not**)
pear (☐ **with counsel,** _____). Evidence was adduced,
d the court, being fully advised, finds that this court has jurisdiction of the parties and subject matter
is action.

IT IS THEREFORE ORDERED, pursuant to Neb. Rev. Stat. § 28-311.09, unless otherwise
missed or modified by the court, the harassment protection order issued on _____ August 24, 2021
**py attached**, shall remain in effect for a period of one year from the date of the original order.

IT IS FURTHER ORDERED that all costs of filing and service in this case are (☐ **taxed to the**
spondent) or (☐ **waived**).

TED: _____ September 16, 2021 _____

JUDGE _____

**NOTICE TO RESPONDENT**

RSUANT to 18 U.S.C.2265, this order is enforced in all fifty states, the District of Columbia, tribal
ds and U.S. territories. Moreover, pursuant to 18 U.S.C.922 if a final order is entered against you af
earing of which you had actual knowledge and an opportunity to participate, whether or not you
tually participated and if this court order restrains you from harassing, stalking, or threatening an
imate partner or child of such intimate partner, or engaging in other conduct that would place an
imate partner in reasonable fear of bodily injury to the partner or child, you may be subject to a fede
nalty for possessing, transporting, or accepting a firearm or ammunition.

#12    FILED
IN DISTRICT COURT
DOUGLAS COUNTY NEBRASK

SEP 1 6 2021

Page 1 of 2

A harassment protection order is a court order issued to a victim who has been harassed, pursuant to Neb. Rev. Stat. § 28-311.09 et seq.

In order to qualify for a harassment protection order:

- the petition shall state the events and dates of acts constituting the alleged harassment. This must include the most recent and most severe incident(s).
- the petitioner must show that the respondent has engaged in a knowing and willful course of conduct directed at the petitioner which seriously terrifies, threatens, or intimidates the petitioner and which serves no legitimate purpose.
  - A course of conduct is defined as a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking, telephoning, contacting, or otherwise communicating with the petitioner.

A protection order may prohibit the respondent from:

- imposing any restraint upon the petitioner or family or household member, or liberty of the petitioner,
- harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of the petitioner,
- telephoning, contacting, or otherwise communicating with the petitioner.

**Once the protection order petition is granted, it may not be withdrawn except upon order of the court.** The protection order shall be effective for one year unless otherwise modified by the court.

A court, on its own motion or at the request of the petitioner, may treat a petition for a harassment protection order as a request for a sexual assault protection order or domestic abuse protection order, if it appears from the facts in the petition affidavit and evidence presented at a show-cause hearing that such other protection order is more appropriate.

## NOTICE TO PETITIONER

Fees to cover costs associated with the filing, issuance, or service of a protection order shall not be charged, except that a court may assess such fees and costs if the court finds that the statements contained in the application were false and that the protection order was sought in bad faith.

## NOTICE TO RESPONDENT

If there has been an **Ex Parte** Protection Order served upon you and you wish to request a hearing to show cause why the order should not remain in effect, you must request a hearing on the provided "Request for Hearing" form by completing the form and returning it to the clerk of the district court at the address listed at the bottom of the form. You must return the form within ten (10) business days after you have been served. The court will schedule a hearing within thirty (30) days after reviewing our request and shall notify you and the petitioner of the hearing date.

If there is a hearing scheduled and you wish to defend against the claims set forth in the application for a protection order, you must appear at the hearing. You are warned that if you fail to appear, the case will proceed without you and a final order may be entered against you for the relief requested in the petition.

You are required to obey the terms of the protection order as soon as it is served upon you. If you disobey the terms of the protection order, you will be subject to the following **Nebraska Revised Statutes.**

**Violation of a Protection Order:** Any person convicted of violating the terms of a harassment protection order after being served shall be subject to either Neb. Rev. Stat. § 28-311.04 or § 28-311.09(4).

If a protection order has been issued against you, the following **United States Federal Statutes** apply to the issuance of a valid protection order.

**Full Faith and Credit Provision:** Pursuant to 18 U.S.C. § 2265, this order is enforceable in all fifty (50) states, the District of Columbia, tribal lands and U.S. territories. The penalties for violation of this order are determined by the existing penalty of the location in which the violation occurred. Nebraska's Harassment Full Faith and Credit provisions are found in Neb. Rev. Stat. § 28-311.10.

**Interstate Domestic Violence/Violation of a Protection Order:**

- If you travel across state or tribal borders with the intent to injure the petitioner and then intentionally commit a crime of violence causing bodily injury to the petitioner, you may be convicted of committing a federal offense under 18 U.S.C. § 2261(a)(1). You may also be convicted of committing a federal offense if you cause the petitioner to cross state or tribal borders for this purpose. 18 U.S.C. § 2262(a)(2).
- If you travel across state or tribal borders with the intent to violate the final protection order and subsequently violate such order, you may be convicted of committing a federal offense under 18 U.S.C. § 2261(a)(1).
- You may also be convicted of committing a federal offense if you cause the plaintiff to cross state or tribal borders for this purpose. 18 U.S.C. § 2262(a)(2).

Page 2 of 2

Harassment Protection Order (Afer

| REQUIRED | HARASSMENT |  |
|---|---|---|
| 19:5     Revised 01/20 | **PROTECTION ORDER** | |
| ). Rev. Stat. § 28-311.09 | | 002232820D01 |
| :ument # _____ | | |

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

avonna Leigh Holman
_____
                                    Petitioner,

_____
Additional Petitioner/Minor Child(ren),

_____
Additional Petitioner/Minor Child(ren),

stin Riddle
_____
                                    Respondent.

Case No. CI21-8450 _____

## HARASSMENT PROTECTION ORDER
## (After Hearing, Ex Parte Order Issued

e protected party(ies) of this Order is/are:

1. Shavonna Leigh Holman     4. _____
2. _____     5. _____
3. _____     6. _____

THIS MATTER came on before the court, pursuant to Neb. Rev. Stat. § 28-311.09, upon the petitio d Request for Hearing. The petitioner (☒ **was/were**) (☐ **was/were not**) present in court (☐ **with un·sel,** Jill Robb Ackerman _____ ). The respondent ( ☒ **did**) (☐ **did not**) pear (☐ **with counsel,**_____). Evidence was adduced, d the court, being fully advised, finds that this court has jurisdiction of the parties and subject matter s action.

IT IS THEREFORE ORDERED, pursuant to Neb. Rev. Stat. § 28-311.09, unless otherwise ·missed or modified by the court, the harassment protection order issued on _____ August 24, 2021 py **attached,** shall remain in effect for a period of one year from the date of the original order.

IT IS FURTHER ORDERED that all costs of filing and service in this case are (☐ **taxed to the** ·spondent) or (☐ **waived**).

\TED: _____ September 16, 2021 _____

                              JUDGE _____

### NOTICE TO RESPONDENT

IRSUANT to 18 U.S.C.2265, this order is enforced in all fifty states, the District of Columbia, tribal ids and U.S. territories. Moreover, pursuant to 18 U.S.C.922 if a final order is entered against you af learing of which you had actual knowledge and an opportunity to participate, whether or not you :tually participated and if this court order restrains you from harassing, stalking, or threatening an imate partner or child of such intimate partner, or engaging in other conduct that would place an imate partner in reasonable fear of bodily injury to the partner or child, you may be subject to a fede nalty for possessing, transporting, or accepting a firearm or ammunition.

#12   FILED
IN DISTRICT COURT
DOUGLAS COUNTY NEBRASK
SEP 1 6 2021

harassment protection order is a court order issued to a victim who has been harassed, pursuant to Neb. Rev. Stat. 28-311.09 et seq.

order to qualify for a harassment protection order:

- the petition shall state the events and dates of acts constituting the alleged harassment. This must include the most recent and most severe incident(s).
- the petitioner must show that the respondent has engaged in a knowing and willful course of conduct directed at the petitioner which seriously terrifies, threatens, or intimidates the petitioner and which serves no legitimate purpose.
  - A course of conduct is defined as a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking, telephoning, contacting, or otherwise communicating with the petitioner.

protection order may prohibit the respondent from:

- imposing any restraint upon the petitioner or family or household member, or liberty of the petitioner,
- harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of the petitioner,
- telephoning, contacting, or otherwise communicating with the petitioner.

**nce the protection order petition is granted, it may not be withdrawn except upon order of the court.**
he protection order shall be effective for one year unless otherwise modified by the court.

court, on its own motion or at the request of the petitioner, may treat a petition for a harassment protection order as a quest for a sexual assault protection order or domestic abuse protection order, if it appears from the facts in the petition, ffidavit and evidence presented at a show-cause hearing that such other protection order is more appropriate.

### NOTICE TO PETITIONER

ees to cover costs associated with the filing, issuance, or service of a protection order shall not be charged, except that a ourt may assess such fees and costs if the court finds that the statements contained in the application were false and at the protection order was sought in bad faith.

### NOTICE TO RESPONDENT

there has been an **Ex Parte** Protection Order served upon you and you wish to request a hearing to show cause why e order should not remain in effect, you must request a hearing on the provided "Request for Hearing" form by completing e form and returning it to the clerk of the district court at the address listed at the bottom of the form. You must return e form within ten (10) business days after you have been served. The court will schedule a hearing within thirty (30) ays after reviewing our request and shall notify you and the petitioner of the hearing date.

there is a hearing scheduled and you wish to defend against the claims set forth in the application for a protection rder, you must appear at the hearing. You are warned that if you fail to appear, the case will proceed without you and a nal order may be entered against you for the relief requested in the petition.

ou are required to obey the terms of the protection order as soon as it is served upon you. If you disobey the terms the protection order, you will be subject to the following **Nebraska Revised Statutes.**

iolation of a Protection Order: Any person convicted of violating the terms of a harassment protection order after being rved shall be subject to either Neb. Rev. Stat. § 28-311.04 or § 28-311.09(4).

a protection order has been issued against you, the following **United States Federal Statutes** apply to the issuance of a alid protection order.

ull Faith and Credit Provision: Pursuant to 18 U.S.C. § 2265, this order is enforceable in all fifty (50) states, the District Columbia, tribal lands and U.S. territories. The penalties for violation of this order are determined by e existing penalty of the location in which the violation occurred. Nebraska's Harassment Full Faith and Credit rovisions are found in Neb. Rev. Stat. § 28-311.10.

terstate Domestic Violence/Violation of a Protection Order:

- If you travel across state or tribal borders with the intent to injure the petitioner and then intentionally commit a crime of violence causing bodily injury to the petitioner, you may be convicted of committing a federal offense under 18 U.S.C. § 2261(a)(1). You may also be convicted of violating a federal offense if you cause the petitioner to cross state or tribal borders for this purpose. 18 U.S.C. § 2262(a)(2).
- If you travel across state or tribal borders with the intent to violate the final protection order and subsequently violate such order, you may be convicted of committing a federal offense under 18 U.S.C. § 2261(a)(1).
- You may also be convicted of committing a federal offense if you cause the plaintiff to cross state or tribal borders for this purpose. 18 U.S.C. §2262(a)(2)

CERTIFICATE OF SERVICE

On this __ day of _____ 20__ a certified and correct copy of _____ the res_____

Page 2 of 2

Harassment Protection Order (After...

1              IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

2     SHAVONNA L. HOLMAN,            ) CASE NO. CI21-8450
                                     )
3              PETITIONER,           ) TRANSCRIPT OF
                                     ) PROCEEDINGS
4          VS.                       )
                                     )
5     JUSTIN RIDDLE,                 )
                                     )
6              RESPONDENT,           )
      _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ )

7

8              Hearing had before HONORABLE DUANE C.

9     DOUGHERTY, Omaha, Nebraska, on September 16, 2021.

10                      A P P E A R A N C E S

11    FOR THE PETITIONER:
      MS. JILL R. ACKERMAN
12    MS. CAMERON C. FINKE
      BAIRD HOLM, LLP
13    1500 Woodmen Tower
      1700 Farnam Street
14    Omaha, Nebraska 68102

15    FOR THE RESPONDENT:
      MR. JUSTIN RIDDLE,
16    SELF-REPRESENTED LITIGANT
      16422 Patrick Avenue
17    Omaha, Nebraska 68116

18

19

20

21

22

23

24

25

1       C E R T I F I C A T E

2            I, Victoria L. Retzlaff, Official Court

3    Reporter in the District Court of Nebraska for the

4    Fourth Judicial District, do hereby certify that the

5    within and following full transcript of proceedings

6    contains all the evidence requested to be

7    transcribed by me, and the rulings of the Court

8    thereon, from the proceedings had in or at the trial

9    of the foregoing cause in said court; and that said

10   full transcript of proceedings is a correct and

11   complete transcription of the evidence requested to

12   be transcribed from the record made at the time of

13   said proceedings or trial.

14            Dated this 29th day of September, 2021.

15

16            _____

17            Victoria L. Retzlaff, RPR
              Official Court Reporter

18

19

20

21

22

23

24

25

```
 1              (At 8:49 a.m., on September 16, 2021,

 2   before the Honorable DUANE C. DOUGHERTY, with

 3   Ms. Jill R. Ackerman and Ms. Cameron C. Finke,

 4   Attorneys at Law, present with and on behalf of the

 5   Petitioner; and with Justin Riddle, Self-Represented

 6   Litigant, present on behalf of the Respondent, the

 7   following proceedings were had, to-wit:)

 8              THE COURT:  We're here in the matter

 9   titled Shavonna Holman versus Justin Riddle, CI21-8450.

10         Counsel, do you want to enter your appearance.

11              MS. ACKERMAN:  Yes, on behalf of the

12   Petitioner, Jill Robb Ackerman and Cameron Finke on

13   behalf of Shavonna Holman.

14              THE COURT:  All right.  And, Mr. Riddle,

15   you're here; is that correct?

16              MR. RIDDLE:  I am, sir.

17              THE COURT:  All right.  And you're here

18   without an attorney, correct?

19              MR. RIDDLE:  That's correct.

20              THE COURT:  All right.  Do you plan on

21   going forward today, then, without a lawyer?

22              MR. RIDDLE:  I do, sir.

23              THE COURT:  Okay.  Well, the way we do

24   this is I'm going to look at the Petitioner, and I'm

25   going to swear her in.  I'm going to let her testify as
```

```
 1   to the issues that are on this petition, only these
 2   issues.  She can't testify about anything else because
 3   that would be a violation of your due process that you
 4   didn't get notice of it, so -- and then after she's done
 5   testifying and telling us what she wants to tell us,
 6   I'll let you ask her any questions you would like to ask
 7   her.  And then when you're done with that and when
 8   they're done with all their witnesses, then I'll come to
 9   your side and let you tell me as to each one of these
10   issues too.  I'll swear you in and you'll tell me.
11   Okay?
12                    MR. RIDDLE:  Thank you, sir.
13                    THE COURT:  All right.  Counsel, who do
14   you want to testify?
15                    MS. ACKERMAN:  Dr. Holman to the stand,
16   please.
17                    SHAVONNA HOLMAN,
18            having been first duly sworn,
19        was examined and testified as follows:
20                    DIRECT EXAMINATION
21                    THE COURT:  All right.  Would you tell me
22   your name.
23                    THE WITNESS:  Shavonna Holman.
24                    THE COURT:  Okay.  Thank you.  Counsel,
25   go ahead.
```

```
 1              MS. ACKERMAN:  Thank you.

 2   BY MS. ACKERMAN:

 3       Q.    Dr. Holman, you -- could you please tell us,

 4   what is your job?  What do you do?

 5       A.    I am a professor at the University of Nebraska

 6   in Lincoln.

 7       Q.    And do you serve on any boards?

 8       A.    Yes, I do.

 9       Q.    And what board do you serve on?

10       A.    I serve on several boards.  Do you want me to

11   name them?

12       Q.    Let's talk about the one that's at issue here.

13       A.    Omaha Public Schools Board of Education.

14       Q.    And how long have you been on the board?

15       A.    I've been on the board -- this is my fourth

16   year.

17       Q.    And what's your current position on the board?

18       A.    I serve as the president of the board.

19       Q.    And, Dr. Holman, you're the Petitioner who

20   brought a petition for harassment order -- petition to

21   obtain a harassment protection order against Mr. Riddle;

22   is that correct?

23       A.    Yes.

24              MS. ACKERMAN:  May I approach the bench?

25              THE COURT:  Certainly.
```

 1            MS. ACKERMAN:  We have marked as

 2    Exhibit 1, a copy of the petition and order.  This is

 3    the petition for the order, Your Honor.

 4            THE COURT:  Thank you.  Are you offering

 5    Exhibit 1?

 6            MS. ACKERMAN:  Yes, I'm going to offer

 7    Exhibit 1, please.

 8            THE COURT:  Any objection to Exhibit 1

 9    being received, sir, as evidence?

10            MR. RIDDLE:  No, sir.

11            THE COURT:  Exhibit 1 will be received.

12    BY MS. ACKERMAN:

13       Q.    Dr. Holman, if we turn to the second page of

14    your petition, you identify at the bottom four events

15    that led to you filing your petition for order -- for

16    Mr. Riddle to not harass you; is that correct?

17       A.    Yes.

18       Q.    And in the first event you describe -- can you

19    tell the Court what happened in the first event that

20    you're describing?

21       A.    Would you like for me to read directly from my

22    statement or just speak?

23       Q.    Just tell us what happened, if you would.

24       A.    So we were having a board meeting, and

25    Mr. Riddle was at the podium.  I asked him to state

```
 1    his -- state and spell his name as well as his address.

 2    He refused to state his address and said that he was not

 3    going to.  And I mentioned to him that it was state

 4    statute that the address had to be shared for the public

 5    meeting, and he refused.  And so I asked the audio

 6    technician to cut the microphone and asked him to sit.

 7    And he refused to sit.  And I asked for a five-minute

 8    recess during the meeting because the meeting started to

 9    get a little bit out of control with him not following

10    the expectation.  And during that time, he left the

11    podium and approached the dais.

12         Q.   And what was he doing as he approached the

13    dais?

14         A.   He was talking during that time.  I'm not even

15    quite certain what he was saying, but he was coming

16    towards the dais and again was asked to go back to his

17    seat.  And then I asked for security to come up and

18    assist.

19         Q.   Okay.  And then what did security do?

20         A.   Security and also the police officer came up

21    to assist Mr. Riddle in leaving the meeting.

22         Q.   Okay.

23              MS. ACKERMAN:  Your Honor, I'd like to

24    approach the bench again.

25              THE COURT:  Certainly.
```

1              MS. ACKERMAN:   We have a copy of the

2      video clip that she's referencing from the board

3      meeting.

4              And, Mr. Riddle, here is a copy.

5              MR. RIDDLE:   Thank you.

6              MS. ACKERMAN:   And this we would -- I'd

7      like to offer this in evidence.   And we do have it ready

8      to play, Your Honor.   It's about a two-minute clip.

9              THE COURT:   All right.   Any objection to

10     Exhibit No. 3 being received, sir?

11             MR. RIDDLE:   No objection.

12             THE COURT:   Exhibit 3 will be received,

13     and you may publish it.

14                     (Whereupon, Exhibit 3 is played in

15                      open court.)

16     BY MS. ACKERMAN:

17        Q.   Dr. Holman, is this what occurred that you're

18     referencing in your first...

19        A.   Yes.

20        Q.   Have you ever had to cut a mic on an

21     individual in one of the board meetings?

22        A.   Yes.

23        Q.   And when did you do that?

24        A.   When individuals go beyond their time limit,

25     and then I ask for the audio technician to cut the

1    microphone.

2        Q.    Okay.  Have you ever had to cut someone off

3    because they refused to cooperate and follow the rules

4    such as this?

5        A.    No.

6        Q.    Have you ever had anybody come around -- in

7    the four years that you've been on the board, have you

8    ever had anyone come around the bench towards you?  And

9    I believe it's Dr. Logan sitting there with you; is that

10   correct?

11       A.    I've never had that happen before.

12       Q.    And he was waving his hands at you at that

13   time and pointing; is that correct?

14       A.    Yes.

15       Q.    How did you feel as a result of this?

16       A.    To be honest with you, it really frightened

17   me, because I've never had anybody to leave the podium

18   and approach the dais before not knowing what was going

19   to happen.

20       Q.    Were you frightened?

21       A.    Yes, I was.

22       Q.    There was this person who came around, and

23   they knew -- correct -- you gave him what the statute

24   was; is that correct --

25       A.    That is correct.

1      Q.    -- that required him to give his address?

2      A.    Yes.

3      Q.    If you go to the next page of your affidavit,

4   the -- and I would like to note something.  I believe

5   that you watched this video.  This video actually -- I

6   believe in your affidavit you noted is the August 9th

7   video, but it was actually the earlier date that's on

8   the CD; is that correct?

9      A.    That is correct.

10      Q.    But that is the event that you were

11   referencing?

12      A.    Yes, ma'am.

13      Q.    Okay.  I'd like to have you look at your next

14   entry, which is coming from August...

15                    (Discussion had off the record.)

16              MS. ACKERMAN:  May I approach the --

17              THE COURT:  Certainly.

18              MS. ACKERMAN:  -- approach the bench?

19                    (Discussion had off the record.)

20              MS. ACKERMAN:  This is the August 17th

21   email that's referenced.  It's been marked as Exhibit 6.

22   And I'd like to offer this into evidence.

23              THE COURT:  Any objection to

24   Exhibit 6, sir?

25              MR. RIDDLE:  No objection, Your Honor.

```
 1   Thank you.
 2                  THE COURT:  Exhibit 6 will be received.
 3                  MS. ACKERMAN:  Actually, I want to go
 4   back.  I'll offer that one, but this I'd like to -- this
 5   has been marked as Exhibit 5.  And this is an
 6   August 14th email.
 7                  THE COURT:  Okay.  Do you want her to
 8   have the original?
 9                  MS. ACKERMAN:  Yes.  That'd be fine.
10                  THE COURT:  You should have the original,
11   ma'am, if you're going to testify about it.
12                  THE WITNESS:  Okay.
13                  THE COURT:  Any objection to Exhibit 5?
14            And then there's 6, when she gets to it.
15                  MS. ACKERMAN:  And, Ms. Holman, on this
16   -- Dr. Holman, if you would review this.
17                  THE COURT:  One second.
18            Any objection to Exhibit 5?
19                  MR. RIDDLE:  I don't -- I don't see this
20   in here.  Is that correct?  Is that correct?  I
21   apologize.
22                  MS. ACKERMAN:  That is not.  That is
23   not --
24                  MR. RIDDLE:  Oh, okay.  Yeah, so I
25   object.  I mean, if it's unrelated.
```

```
 1                    THE COURT:  Exhibit 5 will be received.
 2                         (Discussion had off the record.)
 3   BY MS. ACKERMAN:
 4        Q.   Okay.  If you look at Exhibit -- this, please.
 5                    MS. FINKE:  Six.
 6   BY MS. ACKERMAN
 7        Q.   Six.  Exhibit 6, this is the August 17th
 8   email?
 9        A.   Yes.
10        Q.   If you would review that.  Attached to that
11   below is an August 11th email, if you look on the second
12   page.
13        A.   Yes.
14        Q.   And what -- is that from Mr. Riddle?
15        A.   It is from Mr. Riddle.
16        Q.   And as you reviewed that, did you have any
17   issues with the August 11th email?
18        A.   No.
19        Q.   Let's go, though, to the email then which
20   is -- and that was simply Mr. Riddle requesting
21   questions to be answered by the board; is that correct?
22        A.   Yes.
23        Q.   Okay.  If you go to August -- the beginning
24   email of this, the first page, which is the August 17th
25   email, if you look at that one, would you please review
```

```
 1   it.   Were there certain parts of this that you felt that
 2   you were being threatened or he was trying to intimidate
 3   you?
 4       A.    "Let's see who wants to saved themselves and
 5   who wants to fight the city.  You ain't seen nothing
 6   yet.  It's been 3 weeks."
 7                   THE COURT:  Doctor, where are you reading
 8   that from?
 9                   THE WITNESS:  Page 2.
10                   THE COURT:  Of Exhibit 6?
11                   THE WITNESS:  Of Exhibit 6, yes.
12                   THE COURT:  Give me a moment.
13                   THE WITNESS:  I'm starting right up here.
14                   THE COURT:  Okay.  Thank you.
15                   THE WITNESS:  You're welcome.
16                   THE COURT:  I apologize.  I didn't see
17   it.  Thank you very much.
18                   THE WITNESS:  You're welcome.
19   BY MS. ACKERMAN:
20       Q.    Were there other parts of this that you
21   considered it was -- he was trying to intimidate you or
22   frighten you?
23       A.    Yes.
24       Q.    And what parts would that be?
25       A.    "Otherwise, consider yourself 100% gone from
```

```
 1   a future political career, of any type, including you
 2   Cheryl."
 3           The next sentence would be, "You have 36
 4   hours."  And then the final sentence of this email, "If
 5   not, look forward to phase 2."
 6       Q.   Okay.  What about, "Individually, you're both
 7   100 percent safe from exposure off the list."  Did that
 8   cause you concern?
 9       A.   I'm sorry?
10       Q.   The one above that, individually, you both are
11   100 percent safe?
12       A.   Both, yes.  Yes.
13       Q.   Is he referring to someone else in this, not
14   to you; is that correct?
15       A.   Yes.
16       Q.   Now, how did this make you feel when you saw
17   this?
18       A.   To be honest with you, I was a little bit
19   paralyzed because I wasn't certain what was going on or
20   why we were even receiving these emails.  I felt like he
21   was threatening through the emails and just very
22   frightful, especially after the previous incident.
23       Q.   Had he -- after the previous incident, had
24   you -- I believe in the affidavit you noticed that he
25   was trolling you --
```

```
1        A.    That is correct.

2        Q.    -- on social media?

3        A.    Yes.

4        Q.    Can you tell me what was happening on that?

5        A.    After the board meeting, that evening on

6   Twitter I noticed that he was responding -- an

7   individual noted, was thanking us about masking.  And

8   Mr. Riddle made a comment about me.  And I can't recall

9   how many comments there were.  But then also placed the

10  board meeting video on the Twitter.  And at that point,

11  I just blocked him because I didn't want to read

12  anything that he had to say or have anything to do with

13  him.

14        And then the next day -- since I blocked him,

15  the next day the chair of my department at the

16  university texted me and said, hey, there's some weird

17  posting attached to you through the university, and do

18  you know anything about it.  And so I just assumed who

19  it was, and -- but because I had already blocked him, I

20  was not able to see until the chair of my department

21  told me who it was.

22        Q.    And what was -- how was that person

23  identifying themselves who was posting these tweets?

24        A.    The Riddler.

25        Q.    And you attribute those to Mr. Riddle; is that
```

```
 1   correct?

 2        A.    That is correct.

 3        Q.    The next email you reference is the

 4   August 21st email.

 5                   MS. ACKERMAN:  May I approach the bench?

 6                   THE COURT:  Certainly.

 7                   MS. ACKERMAN:  I'd like to offer

 8   Exhibit 7.  It's the August 21st email.

 9                   THE COURT:  Any objection to Exhibit 7,

10   sir?

11                   MR. RIDDLE:  No, Your Honor.

12                   THE COURT:  Exhibit 7 will be received.

13   BY MS. ACKERMAN:

14        Q.    So this is a continuing email that you

15   received from Mr. Riddle.  Can you go through this.

16   Were there parts of this that scared you or frightened

17   you?

18        A.    Yes.

19        Q.    And could you go through those parts, please,

20   for the Court.

21        A.    Yes, I will.

22                   "Thank you to the four of you who responded.

23   You are officially safe.  The rest of you, you will

24   share the same fate that Cheryl and Barry will.

25   Termination and Leprosy."
```

1      Q.    Now, let's stop here a second.   What did you

2 believe that potentially was being threatened there?

3      A.    Well, when I read the statement of termination

4 and leprosy, all I could think about was him -- what he

5 would do with regards to me.   Whether that be him wiping

6 me out professionally, social leprosy, ruining my

7 representation that might interfere with the work that I

8 do at the university.

9           I take my career extremely -- it's extremely

10 important to me, and I've worked very intensely and very

11 hard to get to this point.   And the work that I do means

12 the world to me.   And so I just didn't know what he

13 meant, but I did take that as a threat of him

14 terminating me in some sort of way and ruining my

15 representation.

16      Q.    Okay.   Were there other parts of this that

17 disturbed you and scared you?

18      A.    Yes.

19           "The things they dug up on you hold outs, I

20 could have never spent time to find.   Absolutely insane.

21 We have the police you trust, the numbers you wish you

22 had, and the truth, all on our side, (not to mention

23 your favorite reporter)."

24      Q.    And what was it that scared you in those

25 statements?

```
 1          A.   Well, to me, stating that you have all these

 2   people on your side including the police is telling me

 3   that I wouldn't have a chance with the police if I

 4   needed to contact them.  I figured that he was using

 5   that as an intimidation statement and threatening in

 6   saying that, you won't have the help that you need in

 7   order to support you.

 8          Q.   And was there additional information in this

 9   that scared you?

10          A.   Let me look, please.

11               Yes.

12          Q.   And what is that?

13          A.   "At this point, I'm expendable, but will be a

14   martyr.  You, on the other hand, are done."

15          Q.   What was it that scared you about that?

16          A.   Being expendable means that you don't mind

17   what's going to happen, you're going to do everything

18   that you can in your power to make sure that I will

19   suffer.  In some sort of way, I will suffer.  We all

20   know what being a martyr means.  So that means that

21   you're going to do whatever you feel that you need to do

22   to make this happen.

23          Q.   And was there additional information there

24   that scared you?

25          A.   Let me read, please.
```

1          The final sentence, "It's already over."

2     Q.    Okay.  And what did that mean to you, and how

3  did that scare you?

4     A.    That his plan, whatever that is in Phase 2

5  that he spoke about in the previous email, that it was

6  already in motion.  And whatever this plan is, it's

7  going to happen, it's going to come to fruition.

8     Q.    And did you also notice there, I have been

9  contacted by hundreds of people --

10    A.    Yes.

11    Q.    -- and also "Now that I have the media

12 coverage, the only thing I need is to wait"?

13    A.    To wait.

14    Q.    Again, that was trying to intimidate you or

15 frighten you?

16    A.    Yes.

17    Q.    Did this have anything to do with that first

18 email that we talked about where he just had a list of

19 questions to the board?

20    A.    I can't answer that because --

21    Q.    He wasn't talking about issues here --

22    A.    No.

23    Q.    -- was he?

24          These were all threats and attempts to

25 intimidate you?

```
 1        A.    Correct.

 2        Q.    To do something that he wanted?

 3        A.    Correct.

 4        Q.    Dr. Holman, after you received this, what

 5   steps did you take?

 6        A.    So after I received this, I -- the very next

 7   day, I went -- came to the courthouse and filed an order

 8   of protection.  I first went through the steps at home

 9   and downloaded the information and completed the

10   paperwork and then came to the courthouse and filed for

11   the protection order.

12              MS. ACKERMAN:  May I approach the bench?

13              THE COURT:  Certainly.

14              MS. ACKERMAN:  This is what we have

15   marked Exhibit 2.  This is a copy of the ex parte

16   harassment order that was entered by the Court, and I'd

17   like to offer that.

18   BY MS. ACKERMAN

19        Q.    And this is a copy of the protection order,

20   correct?

21        A.    This is.

22        Q.    That was entered.

23              And since that time, have you received any

24   emails from Mr. Riddle?

25        A.    I have not.
```

```
 1        Q.    Has he still been able to participate in the
 2   board meetings?
 3        A.    Yes, he has.
 4        Q.    Has he -- how have you accommodated -- how has
 5   the board accommodated him?
 6        A.    And so what would happen now is that, in order
 7   for Mr. Riddle to still be able to speak during public
 8   comment, I just step out during the time so that he has
 9   his opportunity to speak like the rest of the public.
10        Q.    So the protection order has provided you peace
11   of mind; is that correct?
12        A.    Yes, it has.
13        Q.    Have you been fearful at home as what might --
14   as to what might happen?
15        A.    Yes, ma'am.
16        Q.    And do you have children at home?
17        A.    I do.
18        Q.    And do you work at home?
19        A.    I do.
20        Q.    And were you scared and frightened because you
21   didn't know whether someone would follow you home and do
22   something to you; is that correct?
23        A.    Yes.
24              MS. ACKERMAN:   Okay.   Your Honor, I have
25   no further questions at this time.
```

```
 1                    THE COURT:  All right.  Sir, do you have

 2   any questions of this witness?

 3                    MR. RIDDLE:  I do.

 4                    THE COURT:  Go ahead.

 5                         CROSS-EXAMINATION

 6   BY MR. RIDDLE:

 7       Q.    So I'll try to tie this together quite easily.

 8   Before I spoke, how many people did not give their

 9   address that first night before I spoke, proceeding me

10   immediately?

11       A.    I can't remember off the top of my head, but

12   we can refer to --

13       Q.    There were two.

14       A.    -- the paperwork.

15       Q.    Two.

16                    THE COURT:  You've got to let her answer,

17   sir.  We can't talk over each other.

18                    MR. RIDDLE:  Oh, my apologies.  Yep.

19                    THE COURT:  Go ahead.

20                    MR. RIDDLE:  Can I volunteer that there

21   were two at this point?

22                    THE COURT:  No.  You'll get to testify

23   when it's your turn.

24                    MR. RIDDLE:  Okay.  Fine.

25                    THE COURT:  So just ask --
```

```
 1                    MR. RIDDLE:  Okay.

 2                    THE COURT:  -- direct questions and let

 3    her answer.

 4                    MR. RIDDLE:  Thank you, sir.

 5    BY MR. RIDDLE:

 6         Q.    Prior to the meeting, did you properly

 7    announce the rules regarding the address aspect of the

 8    law?

 9         A.    Yes, I did.

10         Q.    Prior to the meeting?

11         A.    Prior to public comment, yes, I did.

12         Q.    Specifically?  Correctly as you've stated at

13    each time since?

14         A.    I gave the rules of the meeting, yes, I did.

15         Q.    Okay.  And you said that you had shut off

16    microphones in the past for people who went over their

17    time or unruly.  Why did you shut off my mother's

18    microphone, who was a teacher there for 36 years, right

19    before me?  She wasn't unruly.

20         A.    Because she was showing a video and audio of

21    an individual.  And during the -- before public comment,

22    during the script that I read to you all, it says

23    there's -- no identifiable information can be shared

24    during public comment.  And the information was not

25    coming from her exactly, it was coming from the audio.
```

```
 1        Q.   So you're stating that someone's name was

 2   stated on that audio?

 3        A.   I'm not saying that.

 4             MS. ACKERMAN:  Your Honor, I'm going to

 5   object on relevance.

 6             THE COURT:  Overruled.  We'll let him go

 7   a little further.

 8   BY MR. RIDDLE:

 9        Q.   So, you're -- I guess I'm just a little

10   confused.  If no one -- if there's no rule that states

11   that she can't play an audio recording, which is what it

12   was, is audio, and no one's name was stated on there,

13   why was she not allowed to speak and answer -- and play

14   her media and then ask her question at the end?

15        A.   Because the person who was on the audio is an

16   employee of the Omaha Public Schools, which we all knew

17   who it was.

18        Q.   So you knew who it was by audible voice, but

19   nobody in the public knew because we had not stated

20   that, but that was enough to not allow her to speak?

21        A.   Yes, I did know who it was, as well as other

22   board members knew who she -- who the voice was, and it

23   was identifiable information.

24        Q.   Identifiable to the public how?

25        A.   Because the person works for the Omaha Public
```

1    Schools.  There are persons in the audience who also

2    work for the Omaha Public Schools and people who know

3    the individual.  His voice was identifiable.

4        Q.   Okay.  I would actually like to --

5              MR. RIDDLE:  Can I -- thank you, sir.

6    May I approach?

7              THE COURT:  Certainly.

8    BY MR. RIDDLE:

9        Q.   Now, as an elected official, there's been

10    several rulings regarding your public account and being

11    unable to block your citizens on your public account.

12    Have I attempted to contact you on any personal

13    accounts?

14        A.   Yes, my Twitter.

15        Q.   I won't explain the law on this, because I'm

16    not an attorney or a judge, but when you become a public

17    official and you utilize your Twitter for public -- for

18    the school, it becomes part of your public profile.

19           But so we did already cover termination

20    leprosy, which termination is a very fair threat, so to

21    speak.  It's a threat.  Okay.  Termination.  We're

22    threatening with replacing you.  That's not illegal.

23    Leprosy was an easier way of saying the inability to

24    regain public trust ever again.  But obviously, unless

25    I --

1                    THE COURT:  Sir, we've got to have a

2    question.  You'll get to tell me that --

3                    MR. RIDDLE:  Oh, yes.  I apologize.

4                    THE COURT:  -- a chance to tell me that

5    when you testify.

6    BY MR. RIDDLE:

7        Q.    You mentioned that my comment that, We have

8    the police that you trust, was of concern to you.  How

9    many times did you or the board member or Dr. Logan or

10   the Omaha Public Schools, that you're aware of, call the

11   police on me for asking, first, those questions?  For

12   calling them on Jaden for showing up at the meeting?

13                   MS. ACKERMAN:  Objection:  Relevance and

14   foundation.

15                   THE COURT:  Well, you're asking her, sir,

16   how many times she has asked for the police to approach

17   you at one of these meetings?

18                   MR. RIDDLE:  No.  They called me.

19                   THE COURT:  Called you at home?  Called

20   you personally?

21                   MR. RIDDLE:  Correct.  And they also

22   called and stopped by a student's house.

23                   THE COURT:  All right.  Ma'am -- or,

24   Doctor, excuse me, if you'd go ahead and answer that.

25                   THE WITNESS:  I don't know.  I've never

1   called the police on you.

2   BY MR. RIDDLE:

3        Q.    Okay.  Do you know who has?

4        A.    I do not.

5        Q.    Phase 2.  Look forward to Phase 2.  That was

6   public participation.  How many emails would you say

7   you've gotten since I sent you that email and said I was

8   getting the public involved?

9        A.    I can't count right now without going back to

10  my email.

11       Q.    Would you say compared to the normal amount of

12  emails you typically get, you saw a large volume

13  increase?

14       A.    I don't know.

15       Q.    Okay.  From the first meeting that I was there

16  where there was maybe, in my estimation, ten people in

17  the crowd, to the most recent one, would you say there

18  was a significant increase in public participation?

19       A.    Not at the very last meeting, no.

20       Q.    So you would say there were fewer people at

21  this last meeting than the first meeting?

22       A.    Potentially, but I'm not sure.

23       Q.    Have I ever personally threatened you?

24       A.    Through the emails, yes.

25       Q.    And those emails also went to nine other

 1    individuals; is that correct?

 2        A.    I don't know.  I just know that my name was on

 3    the emails.

 4        Q.    And the other board members.

 5            And of those nine individuals, how many of

 6    them, that you're aware of, thought that I was

 7    threatening them with anything more than legislative

 8    action and getting the public involved, which is what I

 9    stated?

10              MS. ACKERMAN:  Objection:  Your Honor,

11    foundation.

12              THE COURT:  Sustained.  She can't really

13    speak about what was in those other people's minds, sir.

14              MR. RIDDLE:  Fair enough.

15    BY MR. RIDDLE:

16        Q.    But to the best of your knowledge, none of

17    them have filed any type of protection order against me?

18        A.    I don't know if they have or not.

19        Q.    You stated that you didn't know why you were

20    receiving the emails.  Did you read the questions that

21    were in the emails?

22        A.    The very first email, yes, I did.

23        Q.    Did you answer them?

24        A.    I did not.

25        Q.    To the best of your knowledge, did anybody

```
 1  answer them?

 2       A.   I have no idea.

 3       Q.   Did I ask more than once?

 4       A.   Will you restate your question, please.

 5       Q.   Have I asked those questions more than once?

 6       A.   I don't know.

 7       Q.   Did I ask them in the meeting?

 8       A.   I don't know.  I can't recall.

 9       Q.   Okay.  Did I turn them in in the meeting with

10  paper for everybody and say, Here's these questions?

11       A.   You may have provided them to Mr. Ray.  There

12  were questions in our board office, yes.

13       Q.   And do those have a routine to get answered?

14       A.   Yes, they do.

15       Q.   And what would that routine be?

16       A.   Those questions would be asked -- answered by

17  district administration, not the board.

18       Q.   And how long would that take?

19       A.   I don't know what their process is, so I

20  cannot give you a time approximation.

21       Q.   So it could be never?

22       A.   Again, as I have already stated, I have no

23  idea.

24                 MR. RIDDLE:  No further --

25                 THE WITNESS:  I do know that --
```

1              MR. RIDDLE:  -- questions, Your Honor.

2              THE COURT:  All right.  Thank you very

3  much.

4         Any redirect?

5              MS. ACKERMAN:  No, I don't.

6              THE COURT:  Doctor, you may step down.

7  Thank you very much.

8

9              THE WITNESS:  Do I take these?

10             THE COURT REPORTER:  I'll take them.

11             THE COURT:  Just leave them right there.

12  Just leave them there.

13             THE COURT REPORTER:  That's fine.

14             THE COURT:  They are now Victoria's

15  responsibility.

16        All right.  Any further evidence from the

17  plaintiff in this matter?

18             MS. ACKERMAN:  No, Your Honor.

19             THE COURT:  I'm sorry?

20             MS. ACKERMAN:  No, Your Honor.

21             THE COURT:  Okay.  Thank you.

22        Sir, the plaintiff has rested.  Do you have

23  any evidence, witnesses you would like to call?

24             MR. RIDDLE:  Just --

25             THE COURT:  That includes yourself.

```
 1                    MR. RIDDLE:  -- myself.

 2                    THE COURT:  Okay.  You would like to

 3   testify yourself?

 4                    MR. RIDDLE:  I would like to, yes.

 5                    THE COURT:  All right.  So we'll do the

 6   same process.  Since you're sitting there by yourself,

 7   we'll just let you remain there.  Is that okay?

 8                    MR. RIDDLE:  That sounds great.

 9                    THE COURT:  And then when you're done,

10   I've got to allow counsel to ask any questions that she

11   may want to ask.  Okay?

12                    MR. RIDDLE:  Absolutely.

13                    THE COURT:  Can I get you to raise your

14   right hand.

15                         JUSTIN RIDDLE,

16              having been first duly sworn,

17            was examined and testified as follows:

18                    DIRECT EXAMINATION

19                    THE COURT:  Could you tell me your name,

20   please.

21                    MR. RIDDLE:  My name is Justin Riddle.

22                    THE COURT:  All right.  Sir, since you

23   don't have a lawyer, it's really not a question-and-

24   answer kind of process --

25                    MR. RIDDLE:  A narrative.
```

1           THE COURT:  -- but keep your answers to

2    -- or your statements, the best you can, to the issues

3    that were presented here today.  Okay?

4           MR. RIDDLE:  Absolutely.

5           THE COURT:  All right.  Go ahead.

6           MR. RIDDLE:  We already went over the

7    sheet marked A in my exhibit.  If we would go to the

8    next sheet marked B.  This is -- this is the tweet that

9    I sent that caused her to block me.  I'll read them out

10   loud.  "So far she has done a great job of eliminating

11   free speech at the board meetings.  That seems like a

12   silly way to spend districts money."  In response to,

13   "We are certainly up for the challenge and working close

14   with you for staff, students and parents of the Omaha

15   Public Schools.  Thank you, Dr. Logan," I said, "Except

16   if they want to voice a concern.  Then, you aren't

17   excited.  You just have the sound guy cut the Mike and

18   the security remove someone who wasn't the disruption.

19   Microphones are not necessary, but you already knew

20   that."

21           I don't have the tweet to this, but my

22   response, "Strong enough, in fact, that if she doesn't

23   like what she hears, she will silence the parents.

24   Fortunately, the Nebraska Department of Education knows

25   that federal law applies to free speech, not district

1  tyrants.  I have a feeling I will be allowed to speak

2  next week."

3          The next one, "Interesting little fact... Next

4  Monday when Shavonne tries to violate my freedom of

5  speech again, she will be signing her own lawsuit.

6  Apparently, it's that whole "white privilege" thing that

7  made it acceptable to silence me and my mother.  We will

8  see how it goes."

9          And finally, "Here's a great example of how

10  @DrShavonna @OPS_LoganSupt eliminated that very

11  amendment from a teacher of 36 YEARS in

12  @OmahaPublicSchool.  Insane!!!."

13          Now, I would like to point out, and again, I'm

14  fully aware that I don't have to teach you the law or

15  anything, so I'll just kind of give you my input.  But

16  it is -- that is a public forum, and she's using it for

17  her board position, and those tweets right there were

18  not offensive at all.  If that was the -- first of all,

19  nothing close to a violation of Twitter, nothing close

20  to a violation of even decent human practices.  That was

21  those -- that was the tweet.  Those were the tweets that

22  she decided were such a problem that she decided to

23  block me from being able to see her account, which

24  again, has recently, in the Sixth Court, been upheld

25  still that they can't do that.

1            And again, all of these videos or all these
2    meetings are on video.  So obviously, there was -- when
3    she had turned off the mic and I turned around to speak
4    to the crowd -- because that's what I was there for.
5    They're doing things in this district -- for example,
6    the first time I reached out and sent emails about this
7    to the superintendent, I was called by the Emotional
8    Wellness Department of the Omaha Police Department
9    because they just heard that I was so upset about
10   critical race theory that I might hurt myself, and so
11   they had to reach out to me.  Okay.  Then when a student
12   showed up a week later at the meeting --
13            MS. ACKERMAN:  Your Honor, I would object
14   on relevance on this.
15            THE COURT:  Overruled.
16        Go ahead, sir.
17            MR. RIDDLE:  Thank you, sir.
18            When a student showed up at the meeting the
19   following week, before he even got home, the police had
20   called his parents.  And then they showed up at his
21   house two days later and wanted to search his house,
22   search his room for nothing.  He had no -- nothing
23   specific.  Just maybe drugs, maybe weapons, just maybe
24   letters, just -- I mean, this is what the school is
25   sending.

1          I've spoken with numerous parents that have

2     had CPS as well called on them for these specific

3     things; for disagreeing with masks or disagreeing with

4     critical race theory.  The board calls employers of

5     people who object.  And they use every strategy to

6     silence people that are speaking out.

7          Now, I've made zero threats of violence.  I

8     have gotten the community involved, as stated.  Hundreds

9     and hundreds of people.  They constantly violate the

10    Open Meetings Act, and it's all on video.

11         I already went over the cops, board members.

12         Again, I maintain that she did not explain the

13    procedures in the first meeting I attended up front.

14    She did on each subsequent meeting, but not in the first

15    one, and, as a layman, I can't be expected to know what

16    I wasn't instructed.  Not that that excuses it.  And I

17    did approach, but I was really speaking to the crowd.

18    And I backed up as soon as I realized how dumb that was.

19         And then again, prior to me going up there,

20    they silenced my mom, who was a teacher at Omaha Public

21    Schools for 36 years because she was playing a video of

22    somebody saying something and had a question about it.

23    But once they heard what it was, they did not want to

24    hear it.  So what this school board has done -- and it's

25    the same thing you're seeing all across the country --

```
 1   is they're trying to fear or scare people into not

 2   objecting, not disagreeing.  And anytime somebody does,

 3   they use tactics like this where these tweets that are

 4   -- I mean, can you imagine if these tweets were severe

 5   enough that this is where we were at these days that

 6   those tweets are saying somebody -- you're threatening a

 7   public official with replacing them and leprosy, which

 8   obviously is just an easier way of saying not getting

 9   another job because you didn't do a good job this time?

10          This kind of stuff -- look, you see in the

11   other emails I reference that -- or we have family that

12   are friends.  They're friends with some of my family.

13   So I've been very public about what I'm doing.  I

14   haven't tried to -- you know, I can't imagine someone

15   like me with a family, with kids, with all this stuff

16   going on, bringing people in, getting the community

17   involved, and trying to shed light on what I can tell

18   you is illegal business practices in a very significant

19   way.  And it's all on video.  I didn't bring the videos,

20   but it's all there.

21          You know, I can't imagine that anything within

22   context could be taken as a threat, because the threat

23   that I made is we will replace you as you are allowed to

24   be replaced as a public official.  Everything they've

25   done has been a violation.  And the only one I can think
```

 1   of is I did approach the podium, but really I was just

 2   walking around because I walk when I talk.

 3                    THE COURT:  All right, sir.  Thank you.

 4            Any questions of this witness?

 5                    MS. ACKERMAN:  Yes, I do have a few

 6   questions of him.

 7                         CROSS-EXAMINATION

 8   BY MS. ACKERMAN:

 9        Q.   I believe that you've admitted that this was a

10   threat to Dr. Holman; is that correct?

11        A.   That what was a threat?  Termination?

12        Q.   Termination, to destroy her reputation; is

13   that correct?

14        A.   Termination is a -- is a -- yeah.  I mean,

15   okay, it's a promise.

16        Q.   It's an attempt to intimidate her?

17        A.   It's an attempt to replace her.

18        Q.   Okay.  And you didn't say that you would

19   replace her through the voting methodology, did you?

20   You didn't say that?

21        A.   No, I did say that in other subsequent emails

22   earlier.

23        Q.   You didn't say that in these emails, did you?

24        A.   Yes, in those emails.  Yes.

25        Q.   Okay.  You were out to get her; isn't that

1    correct?

2         A.    What -- define -- what do you mean, "I was out

3    to get her"?

4         Q.    You were trying to get her to do something

5    through these emails, correct?

6         A.    Which was what?

7         Q.    I don't know.  We haven't figured out what you

8    were trying to get her to do.

9         A.    Well --

10        Q.    You weren't talking about the issues, were

11   you?

12        A.    The issue was that she silenced my speech for

13   a very unfair reason.  She did it to another guy, and he

14   said that he had concerns for his safety.  She still

15   insisted that he give his address.  Which it's

16   specifically written in their rules, if somebody has a

17   concern for their safety, they don't have to.  She

18   insisted on it.  She also voted to have indemnification.

19   She voted for I to have indemnification, which it's also

20   against their policies.  They don't follow any of their

21   policies.

22        Q.    You have a procedure to bring the information.

23   You've not been silenced from talking at the board

24   meetings, have you, since that first one?

25        A.    No.

```
 1        Q.    Okay.  So you've had your opportunity to speak
 2   at the board?
 3        A.    Correct.
 4        Q.    Okay.  So none of your rights have been
 5   violated in that regard; isn't that correct?
 6        A.    That is not correct.
 7        Q.    You have had an opportunity to speak?
 8        A.    Yes.
 9        Q.    Okay.  And you threatened that you were going
10   to have an army of people behind you; isn't that
11   correct?  "I've been contacted by hundreds of people";
12   isn't that correct?
13        A.    Did I say "army"?
14        Q.    Well, I think you said, I've been contacted by
15   hundreds of people.
16        A.    Yes.  I have been contacted by maybe more than
17   just hundreds of people.
18        Q.    Yeah.  "The things they have dug up on some of
19   you hold outs --"  This is from your Page A.
20        A.    Yes.  Correct.
21        Q.    The things that I've dug out --
22        A.    That they have.
23        Q.    -- "I could never have spent the time to
24   find."
25        A.    Correct.
```

```
 1          Q.   Correct?

 2          A.   And do you know what happened with that

 3   information?

 4          Q.   I don't.

 5          A.   That's where the people that contacted me

 6   found the mostly nude pictures of one of the board

 7   members and sent them to the news.  And the picture of

 8   the board member that wears the shirt that says, F-U

 9   girl, but it's not bleeped out.  And he's a board

10   member, and he wears it on his page.  So yes, that

11   information that was dug up is what you're asking about.

12   That's correct.

13          Q.   So that's the type of information you're

14   saying --

15          A.   People dug that up, yes.

16          Q.   Okay.  Isn't it correct -- would you admit --

17   agree with me that you had contacted Mr. Barry Thomas

18   about that video that you're talking about on critical

19   race theory, the Title 9 person at OPS?

20          A.   I --

21          Q.   Isn't that the Barry you refer to when you

22   were going to --

23          A.   I guess I don't know the question in relevance

24   to this.

25                    THE COURT REPORTER:  Just hold on.  Just
```

```
 1    one second.  Can we speak one at a time.  And can I have
 2    you speak into your microphone with the --
 3                   MS. ACKERMAN:  Let me take it off.
 4                   THE COURT REPORTER:  Thank you so much.
 5    BY MS. ACKERMAN
 6        Q.    You, in your Exhibit A say, "The rest of you
 7    will share the same fate that Cheryl and Barry will,"
 8    right?
 9        A.    Correct.
10        Q.    And you sent emails to, I believe, Mr. Barry
11    Thomas; isn't that correct?
12        A.    Correct.
13        Q.    And you also, I believe, posted some
14    information on Twitter -- is that correct -- concerning
15    the CRT?
16        A.    Correct.
17        Q.    Okay.  Do you know who Kyle Rittenhouse is?
18        A.    I do.
19        Q.    And on one of those Twitter lines, wasn't
20    there --
21                   MR. RIDDLE:  Objection.
22                   THE COURT:  You've got to let her answer,
23    sir -- or let her finish her question.
24    BY MS. ACKERMAN:
25        Q.    Kyle Ritt- -- who is Kyle Rittenhouse?
```

```
 1              MR. RIDDLE:   Relevance.
 2   BY MS. ACKERMAN:
 3        Q.    Who is Kyle Rittenhouse?
 4              THE COURT:   Overruled.
 5              THE WITNESS:   Kyle Rittenhouse is a
 6   person who was helping a community and was attacked by a
 7   group of lawless thugs.  And in doing so, he defended
 8   himself and they died.  And people that don't watch the
 9   footage or understand self-defense have a major issue
10   with that.
11   BY MS. ACKERMAN:
12        Q.    In fact, he went across state lines, didn't
13   he, and two people were murdered as a result of that --
14   isn't that correct -- and one other person injured?
15        A.    Is that --
16        Q.    It was against protesters; isn't that correct?
17        A.    No, you're absolutely incorrect.
18        Q.    And didn't you -- on one of those tweet lines,
19   it was, "#KyleRittenhouse Supporters.  Please do me a
20   favor and retweet this.  Not this, but the tweet I'm
21   retweeting."  And this dealt with, "So @barryethomas is
22   technically promoting #CRT aka #criticalracetheory in
23   the @OmahaPublicSchool district, but claiming that
24   because they aren't calling it CRT, it's somehow
25   different?"
```

```
 1              So you knew that you were targeting Kyle
 2   Rittenhouse supporters on this, and that's the reference
 3   that you were making here, that you would suffer the
 4   same fate as Barry or Cheryl; isn't that correct?
 5        A.   No.  That's ridiculous.
 6        Q.   Okay.  And you were aware of this tweet to
 7   Kyle Rittenhouse supporters; isn't that correct?
 8        A.   What --
 9        Q.   Isn't that correct?
10        A.   Hold on.  Are you asking if I was aware of a
11   tweet that asked other people to retweet bad behavior
12   from a district?  Is that what your question is?
13        Q.   Is that correct?
14        A.   Is it --
15        Q.   That was the question.  Answer it.
16        A.   Yes, I retweet.  I had people retweet bad
17   behavior from a district.
18        Q.   And one of them was the support Kyle
19   Rittenhouse supporters; isn't that correct?
20        A.   That's -- okay, so which people is that?
21        Q.   Why don't you take a look at that.
22        A.   No, no.  I mean, who does that entail?
23        Q.   You tell me what that --
24        A.   That entails half a dozen people that we
25   routinely argue with liars on Twitter about things like
```

1   saying that he crossed state lines with a gun and

2   murdered two protesters.  First of all, as you know,

3   that trial hasn't happened, and there's a big divisive

4   position here.  The video shows he was attacked.

5   Self-defense isn't murder.

6       Q.   Okay.  And if I'm correct, though, you

7   don't -- you admit that this is retweeting and you have

8   seen this?

9       A.   Is that illegal?

10                  MS. ACKERMAN:  Okay.  Your Honor, I'd

11  like to mark this as my next exhibit, please.

12                      (Exhibit No. 10

13                      marked for identification.)

14                  THE COURT:  Would you like to offer

15  Exhibit 10?

16                  MS. ACKERMAN:  I would like to offer that

17  into evidence.

18                  THE COURT:  Any objection to Exhibit 10,

19  sir?

20                  MR. RIDDLE:  I object because it's the

21  choice of who I communicate with.  I mean, again --

22                  THE COURT:  Do you have an evidentiary

23  objection, sir?

24                  MR. RIDDLE:  It's real so, no.  I mean, I

25  object based on relevance, but --

```
 1                    THE COURT:  Okay.

 2                    MR. RIDDLE:  -- yeah.

 3                    THE COURT:  That's a fair objection, but

 4    it's overruled.

 5                    MR. RIDDLE:  Understood.

 6                    THE COURT:  So Exhibit 10 will be

 7    received.

 8                    MS. ACKERMAN:  Mr. Riddle -- Your Honor,

 9    I have no further questions.

10                    THE COURT:  Okay.  All right.

11             Mr. Riddle, do you have any further evidence

12    you'd like to offer here today?  Any other further

13    witnesses, I should say?

14                    MR. RIDDLE:  No, Your Honor, I -- you

15    know, I believe it's a --

16                    THE COURT:  Okay.  Okay.  All right.

17    Well, the Court will take -- well, any closing arguments

18    from anybody?

19                    MS. ACKERMAN:  What we'd like to do is

20    present the Court a petitioner's bench brief.  And I

21    have one here for Mr. Riddle and one for you.  I know

22    that the Court has -- is busy today, so --

23                    THE COURT:  I'm going to ask you a favor

24    since you're standing there.  Would you give those --

25                    MS. ACKERMAN:  I certainly will.  Thank
```

1   you.

2            THE COURT:  -- to her so I don't forget

3   to.

4            THE COURT REPORTER:  Thank you.

5            THE COURT:  All right.  Mr. Riddle, they

6   have given me what we would kind of call a closing

7   argument in writing.  I will accept that, and I will

8   read it.  But otherwise, I'm going to take the matter

9   under advisement and review the record and decide what

10  I'm going to do, and then I'll send out an order

11  possibly today.  I'm moving courtrooms today, and

12  they're taking my computer down at 11:00 and my help.

13  So if not today, hopefully we'll be set back up by

14  tomorrow.

15           MS. ACKERMAN:  Your Honor, we're

16  requesting that the protection order be continued

17  throughout the next year.

18           THE COURT:  Certainly.  By law, the ex

19  parte will stay enforced until I either terminate it or

20  continue it with another order.

21           MS. ACKERMAN:  Thank you.

22           THE COURT:  Okay.  So thank you

23  everybody.  Why don't we, for -- anyhow, why don't we

24  allow the Petitioner to -- I'd ask you to sit there for

25  a second, sir, and let the Petitioner leave the

```
 1   courtroom.  And then in a few minutes, then you will be
 2   allowed to leave.  Okay?
 3                MR. RIDDLE:  Okay.
 4                THE COURT:  Kind of a standard practice
 5   we do for protection orders.
 6                MR. RIDDLE:  Sure.
 7                     (9:41 a.m. - Adjournment.)
 8                     ** ** ** **
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```