**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

|  |  |
|---|---|
| JUSTIN RIDDLE, | Case No. 8:23-cv-00547 |
| Plaintiff, | |
| v. | |
| | **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM AND LACK OF STANDING** |
| OMAHA PUBLIC SCHOOLS, | |
| Defendant. | |

**TABLE OF CONTENTS**

|  |  | **Page** |
|---|---|---|
| INTRODUCTION | | 4 |
| ARGUMENT | | 4 |
| A. | PLAINTIFF FAILS TO STATE A PLAUSIBLE CUSTOM OR OFFICIAL POLICY CLAIM AGAINST OPS UNDER 42 U.S.C. § 1983 | 4 |
| | i. The Alleged Custom | 5 |
| | ii. The Alleged Policy | 6 |
| B. | PLAINTIFF SUFFERED NO ACTIONABLE CONSTITUTIONAL VIOLATION ATTRIBUTABLE TO OPS | 7 |
| | i. The Constitutional Violations as Alleged Against the Entity Defendant | 7 |
| | ii. The Alleged Blocking on Social Media and the First Amendment Retaliation Claim | 9 |
| C. | PLAINTIFF CANNOT CIRCUMVENT THE ESTABLISHED LIMITATIONS FOR AN ENTITY LIABILITY CLAIM UNDER SECTION 1983 THROUGH A CONCLUSORY CONSPIRACY ALLEGATION OR ALLEGED ACTIONS DIRECTED AT THIRD PARTIES | 10 |
| CONCLUSION | | 12 |

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Askew v. Millerd*,
191 F.3d 953 (8th Cir. 1999) ................................................................ 10

*Atkinson v. City of Mountain View, Mo.*,
709 F.3d 1201 (8th Cir. 2013) ............................................................ 4, 5

*Bolderson v. City of Wentzville*,
840 F.3d 982 (8th Cir. 2016) .............................................................. 3, 4

*Brandy v. City of St. Louis, Missouri*,
75 F.4th 908 (8th Cir. 2023) ................................................................. 9

*Campbell v. Reisch*,
986 F.3d 822 (8th Cir. 2021) ................................................................ 8

*Connick v. Thompson*,
563 U.S. 51 (2011) ............................................................................... 4

*Covenant Media Of SC, LLC v. City Of N. Charleston*,
493 F.3d 421 (4th Cir. 2007) .............................................................. 10

*Davenport v. Univ. of Ark. Bd. of Trs.*,
553 F.3d 1110 (8th Cir.2009) ............................................................... 7

*Hahn v. Star Bank*,
190 F.3d 708 (6th Cir.1999) ................................................................. 7

*Harmon v. City of Kansas City, Missouri*,
197 F.3d 321 (8th Cir.1999) ................................................................. 6

*Laney v. City of St. Louis*,
56 F.4th 1153 (8th Cir. 2023) ............................................................... 9

*Magee v. Trs. of Hamline Univ.*,
747 F.3d 532 (8th Cir. 2014) ................................................................ 8

*Mettler v. Whitledge*,
165 F.3d 1197 (8th Cir. 1999) .............................................................. 5

*Monnell v. New York Dep't of Soc. Servs.*,
436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ...................... 3, 10

2

*Mulvenon v. Greenwood*,
    643 F.3d 653 (8th Cir.2011) ........................................................................... 7

*Parrish v. Ball*,
    594 F.3d 993 (8th Cir. 2010) ....................................................................... 10

*Quraishi v. St. Charles Cnty., Missouri*,
    986 F.3d 831 (8th Cir. 2021) ......................................................................... 9

*Snider v. City of Cape Girardeau*,
    752 F.3d 1149 (8th Cir. 2014) ....................................................................... 4

*Tirado v. City of Minneapolis*,
    No. 20-cv-1338, 2021 WL 679261 (D. Minn. Feb. 22, 2021) ...................................... 4

*Vaughn v. Ruoff*,
    304 F.3d 793 (8th Cir.2002) ........................................................................... 7

*Ward v. Rock Against Racism*,
    491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ............................................ 6

*Ware v. Jackson Cnty., Mo.*,
    150 F.3d 873 (8th Cir. 1998) ......................................................................... 4

## Statutes

42 U.S.C. § 1983 .............................................................................................. *passim*

Neb. Rev. Stat. § 79-516(1) ........................................................................... 8

**INTRODUCTION**

Plaintiff Justin Riddle's Response to the Motion to Dismiss continues a theme that has permeated this action from the start: that Omaha Public Schools ("OPS" or "District") can be held liable as an entity defendant under 42 U.S.C. § 1983 due to independent actions taken by individual government actors, without identifying any underlying policy or custom of the District that could have served as the moving force behind the alleged injury.   Those alleged claims can be pursued, if at all, only against the individual government actors if not barred by their qualified immunity.   Likewise, Plaintiff cannot attribute those individual actions to OPS through a conclusory conspiracy allegation. Even if Plaintiff's allegations could overcome that fundamental deficiency, his Response confirms reliance on underlying acts that do not constitute an actionable violation of his constitutional rights or were allegedly suffered by other third parties.   The Motion to Dismiss should be granted.

**ARGUMENT**

**A.     PLAINTIFF FAILS TO STATE A PLAUSIBLE CUSTOM OR OFFICIAL POLICY CLAIM AGAINST OPS UNDER 42 U.S.C. § 1983.**

The law for entity liability under Section 1983 is well settled.   "Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee."  *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016).   Recognizing the flaw in his Complaint, Plaintiff now claims his allegations would allow the inference of an alleged "unofficial policy" or "custom" on behalf of the

4

District.  (Doc. 9, p. 5).[1]   Even when assessing those allegations under the flexibility

afforded to a pro se party, they cannot support a plausible Section 1983 action against

OPS as an entity.

> ### i.        The Alleged Custom

"To trigger municipal liability based on unofficial municipal custom, the custom

must be so pervasive among non-policymaking employees of the municipality that it

effectively has the force of law."  *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982,

986 (8th Cir. 2016) (citing *Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998)).

"Although an unconstitutional custom claim cannot be predicated on a single act, the

Eighth Circuit has not determined whether some other, minimum number of incidents is

required as evidence of custom."   *Tirado v. City of Minneapolis*, No. 20-cv-1338

(JRT/ECW), 2021 WL 679261, at *5 (D. Minn. Feb. 22, 2021) (citations omitted).   In

addition to the number of incidences and the timeframe, a plaintiff must further plausibly

allege "deliberate indifference to or tacit authorization of such conduct by the

governmental entity's policymaking officials after notice to the officials of that misconduct

. . ."   *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014).   Indeed,

"[n]otice is the touchstone of deliberate indifference in the context of § 1983 municipal

liability.  *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013).

The sequence of the alleged actions is critical because "contemporaneous or subsequent

conduct cannot establish a pattern of violations that would provide notice to the city and

---

[1] By relying on an alleged "unofficial policy," Plaintiff effectively limits his allegations to a "custom" claim, as an "unofficial policy" is antithetical to the "official policy" required under *Monnell*. Even so, for the sake of completeness, OPS will discuss why Plaintiff's official policy claim likewise should be dismissed on the facts as pled.

the opportunity to conform to constitutional dictates." *Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011) (internal quotations and citations omitted).

Plaintiff's custom allegations are fundamentally flawed. At no point does he identify any previous, ongoing conduct of OPS that occurred before the constitutional violations now claimed against Plaintiff that would allow the inference of an actionable "custom" under the legal standards described above. (Compl., ¶¶ 1-22). Plaintiff does not allege that other persons had their microphone quieted or were removed, were blocked on social media, or had protection orders entered against them where the District indemnified the petitioner for his or her legal costs. (*Id*.). Without such factual contentions, a purported custom could not have served as the moving force behind the constitutional violations Plaintiff claims to have suffered. Thus, no actionable custom could exist on the facts as alleged.

### ii. The Alleged Policy

The term "policy" is limited to "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). To date, Plaintiff has not claimed that any alleged official policy of the District caused a violation of his constitutional rights. He concedes as much by contending that the allegations in the Complaint are plausible "[e]ven in the absence of an expressly adopted written policy authorizing such practices (which, of course, would never exist). . ." (Doc. 9, p. 6).

Alternatively, whether an alleged actor exercised "final authority" is a question of law. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214–15 (8th Cir. 2013) (internal citations omitted). Final authority for OPS is with the Board of Education and its

members. OPS Policy 8120.   The only actions identified in the Complaint and the Response that could even remotely be attributable to the OPS Board or its members in their official capacity are (1) the quieting of Plaintiff's microphone and his removal from the August 2, 2021 board meeting, and (2) the indemnification of Dr. Holman for the harassment protection order.  (Compl., ¶¶ 1-22) (Doc. 9, pp. 6-7).[2]  Neither can support an underlying constitutional violation.

## B. PLAINTIFF SUFFERED NO ACTIONABLE CONSTITUTIONAL VIOLATION ATTRIBUTABLE TO OPS

Plaintiff's failure to allege the necessary prerequisites for entity liability under *Monell* is dispositive of his claims.  The Court need go no further to resolve this Motion. Even so, the absence of any underlying constitutional violation provides a second, independent basis for dismissal.

### i. The Constitutional Violations as Alleged Against the Entity Defendant

When the government creates a limited forum for speech, it may impose valid time, place, and manner restrictions, so long as such regulations are "justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *Harmon v. City of Kansas City, Missouri*, 197 F.3d 321, 328 n. 7 (8th Cir.1999).

---

[2] Plaintiff further alleges that the OPS Board purportedly failed to respond to his requests for information, but does not allege that those actions itself constituted a violation of his constitutional rights. (Doc. 9, p. 7). Moreover, the harassment protection order was obtained by Dr. Holman in her individual capacity, and, in any event, the exercise of a lawful state court procedure cannot give rise to underlying constitutional violation. (Kramer Dec., ¶ 4, Ex. B).

As set forth in OPS's Opening Brief, OPS Policy 8346 is a content-neutral time, place, and manner restriction on its face.  Furthermore, the Policy was not selectively enforced at the August 2, 2021 Board meeting.  The speakers who did not provide their address identified themselves as associated with the District, not members of the general public.  At bottom, Plaintiff could not anchor a viewpoint discrimination claim in the non-enforcement of the address requirement for those two individuals.  Each delivered messages critical of the District.  (Compl., ¶¶ 7-8).  Tellingly, Plaintiff does not contend otherwise in his Response.  (Doc. 9, pp. 1-12).

Instead, Plaintiff focuses on the merits of the harassment protection order, brushing over completely the necessary elements of an underlying violation of the Fourteenth Amendment's Due Process clause.  (*Id.*, p. 7).  To survive the Motion to Dismiss, Plaintiff would have had to plausibly allege:  (1) "a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution," (2) a deprivation "of this protected interest within the meaning of the Due Process Clause," and (3) "that the state did not afford [the plaintiff] adequate procedural rights prior to depriving [him or her] of the[] protected interest."  *Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir.1999) (cited with approval in *Vaughn v. Ruoff,* 304 F.3d 793, 796 (8th Cir.2002)); *see also Mulvenon v. Greenwood,* 643 F.3d 653, 657 (8th Cir.2011) (quoting *Davenport v. Univ. of Ark. Bd. of Trs.,* 553 F.3d 1110, 1114 (8th Cir.2009)). Plaintiff was afforded ample procedural protections, including (1) notice and hearing, (2) the opportunity to adduce evidence and cross-examine Dr. Holman, and (3) an appeal,

which he elected not to pursue.  (Kramer Dec., ¶ 4, Ex. B).[3]  No Due Process violation can be found in the successful prosecution of a proper legal remedy against Riddle.

In addition to not constituting an underlying constitutional violation, OPS was well within its rights to indemnify Dr. Holman for her legal expenses associated with the harassment protection order.  Neb. Rev. Stat. § 79-516(1) allows broad indemnification of school members.  Her legal expenses were directly related to her service as the OPS Board President acting as chair of the August 2, 2021 Board meeting.  (Kramer Dec., ¶ 4, Ex. B).  And OPS' General Counsel determined indemnification was appropriate under the circumstances.  (Doc. 9, pp. 1-2).  Routine indemnification of a Board member for personal expenses incurred in connection with Board activity does not support a plausible Section 1983 claim against OPS.

### ii.    The Alleged Blocking on Social Media and the First Amendment Retaliation Claim

Beyond the alleged removal of Plaintiff from the August 2, 2021 Board meeting, Riddle's Response restates a contention that he was blocked on three social media accounts and retaliated against for exercising his First Amendment rights.  (Compl., ¶¶ 1-22).  The law is clear that an allegation of blocking by a public official alone is insufficient. "[I]t is not enough that the defendant is a public official, because acts that public officials take in the ambit of their personal pursuits" do not trigger Section 1983 liability.  *Campbell v. Reisch*, 986 F.3d 822, 824 (8th Cir. 2021) (citing *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014)).  The Complaint and Response include only a conclusory allegation that Plaintiff was blocked on "official social media accounts."  (Compl., ¶ 9)

---

[3] Unlike in the Complaint, Plaintiff has reverted to conclusorily alleging he was denied notice and hearing. (Doc. 9, pp. 6, 9). Those allegations alone are not sufficient to state a plausible claim.

(Doc. 9, p. 7).   How, when, and for what purpose the three individuals used the alleged accounts are necessary allegations completely absent from the Complaint.   Without further facts that cannot be inferred or assumed, the Complaint does not plausibly state an underlying First Amendment violation under *Campbell*.

Similarly, for the First Amendment retaliation claim, Plaintiff would have needed to plausibly allege that a government actor took an adverse action "that would chill a person of ordinary firmness from continuing the [protected] activity," under an objective test, and that "there was a but-for causal connection between [the government action] and [plaintiff's] injury."  *Brandy v. City of St. Louis, Missouri*, 75 F.4th 908, 915 (8th Cir. 2023) (citing *Quraishi v. St. Charles Cnty., Missouri*, 986 F.3d 831, 837 (8th Cir. 2021); *Laney v. City of St. Louis*, 56 F.4th 1153, 1157 (8th Cir. 2023)).

Here, Plaintiff asks the Court to infer a chilling effect from the implementation of regular OPS policies and routine legal process.  Specifically, Plaintiff relies on his removal from the August 2, 2021 Board meeting after disruptive conduct, two subsequent phone calls by police officers even though no threatening content is alleged to have been conveyed, and the granting of a lawfully obtained and unappealed harassment protection order from a state court judge in favor of Dr. Holman's individual capacity.  (Compl., ¶¶ 1-22) (Doc. 9, pp. 8-12).  Those events would not, as a matter of law, have a chilling effect on a person of ordinary firmness.

## C.   PLAINTIFF CANNOT CIRCUMVENT THE ESTABLISHED LIMITATIONS FOR AN ENTITY LIABILITY CLAIM UNDER SECTION 1983 THROUGH A CONCLUSORY CONSPIRACY ALLEGATION OR ALLEGED ACTIONS DIRECTED AT THIRD PARTIES.

The majority of the Response discusses alleged actions by School Resources Officer "Ott," presumably the same individual identified in the Complaint as Officer "Otto."

10

(Compl., ¶¶ 1-22). It is in the conduct of the alleged Omaha Police Department officer that Plaintiff anchors his "evidence supported narrative." (Doc. 9, p. 3). In doing so, Plaintiff forgets a cardinal rule of Section 1983. "'[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents' on a respondeat superior theory of liability." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (quoting *Monnell v. New York Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

Plaintiff's attempt at an end-around that settled barrier by relying on a conspiracy claim fails as a matter of law. To plead a viable conspiracy under Section 1983, Plaintiff would have had to allege: "[1] that the defendant conspired with others to deprive him or her of a constitutional right; [2] that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and [3] that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). The Complaint identifies no mutual agreement to violate any of Plaintiff's constitutional rights, much less an overt act in furtherance or direct resultant injury to him. (Compl., ¶¶ 1-22). The shortcoming cannot be overcome by inviting the Court to blindly infer a "coordinated effort" from allegations concerning separate actions by individual government actors. (Doc. 9, p. 6).

Finally, Plaintiff lacks standing to support his allegations through alleged police conduct involving other third parties to bolster his own claim, assuming such acts were attributable to the District in the first place. (Doc. 9, p. 8). *See Covenant Media Of SC, LLC v. City Of N. Charleston*, 493 F.3d 421, 429 (4th Cir. 2007) (emphasizing that plaintiff must have standing for each aspect of the ordinance it was challenging). Plaintiff does not allege that he was subjected to an "unwarranted home visit." (Compl., ¶¶ 1-22). His Response references only unidentified third parties. (Doc. 9, p. 5). Plaintiff thus does

11

not have standing to raise a Section 1983 claim of his own due to alleged "unwarranted home visits" suffered by other unidentified persons.

## CONCLUSION

For the above and foregoing reasons, OPS respectfully requests that its Motion to Dismiss be granted and the Court dismiss Plaintiff's claims in their entirety with prejudice, at Plaintiff's cost.

Dated this 22nd day of January, 2024.

OMAHA PUBLIC SCHOOLS Defendant,

By:   /s/Steven D. Davidson
      David J. Kramer (#19327)
      Steven D. Davidson (#18684)
of    BAIRD HOLM LLP
      1700 Farnam St. Suite 1500
      Omaha, NE  68102-2068
      Phone: 402-344-0500
      Facsimile:  402-344-0588
      dkramer@bairdholm.com
      sdavidson@bairdholm.com

## CERTIFICATE OF COMPLIANCE

I hereby certify in accordance with the Court's Local Rule 7.1(d) that, according the 2016 version of Microsoft Word used to prepare this brief, this brief includes 2,845 words, including the caption, headings, footnotes, and quotations.

/s/Steven D. Davidson

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 22nd, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Justin Riddle
16422 Patrick Ave.
Omaha, NE 68116


/s/Steven D. Davidson

6264960.2